DAVID E. MASTAGNI, ESQ. (SBN 204244)
ISAAC S. STEVENS, ESQ. (SBN 251245)
ACE T. TATE, ESQ. (SBN 262015)
IAN B. SANGSTER, ESQ. (SBN 287963)
**MASTAGNI HOLSTEDT**
*A Professional Corporation*
1912 "I" Street
Sacramento, California 95811
Telephone: (916) 446-4692
Facsimile: (916) 447-4614

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACEY VALENTINE, et al., on behalf of herself and all similarly situated individuals,<br><br>              Plaintiffs,<br>v.<br><br>SACRAMENTO METROPOLITAN FIRE DISTRICT,<br>              Defendant. | Case 2:17-cv-00827-KJM-EFB<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION AND FACILITATED NOTICE PURSUANT 29 U.S.C. § 216(b)** |

## I.

## INTRODUCTION

Defendant Sacramento Metropolitan Fire District ("Defendant" or "District") violated the Fair Labor Standards Act (29 U.S.C. § 201 *et. seq.*) ("FLSA") by failing to include all statutorily required forms of compensation in the "regular rate" of pay used to calculate the overtime compensation of Plaintiff Tracey Valentine ("Plaintiff"). (Dkt. No. 1, ¶ 2.) Specifically, Defendant excluded cash paid to Plaintiff for declining District-provided health insurance and additional compensation paid to Plaintiff in lieu of Holidays from the "regular rate" of pay used to calculate her overtime compensation and cash out of compensatory time off ("CTO"). Defendant's illegal compensation computation method (i.e., the undercounting of Plaintiff's "regular rate" of pay) has resulted in the under-payment

of Plaintiff for overtime hours worked. (*Id.*, ¶ 4.) Accordingly, Plaintiff brings the instant action to recover unpaid overtime compensation. (*Id.*, ¶ 1.)

Plaintiff brings this case as a "collective action," asserting claims on behalf of herself and all "similarly situated" individuals who Defendant failed to properly compensate for overtime hours worked as a result of Defendant's exclusion of the remuneration described above. Pursuant to 29 U.S.C. section 216(b), all similarly situated plaintiffs must "opt-in" to an FLSA collective action lawsuit to recover unpaid wages. To opt-in, potential plaintiffs must file with the court a consent to be included in the lawsuit. Accordingly, Plaintiff asks this Court to conditionally certify this case as a collective action and authorize facilitated notice to potential opt-in plaintiffs who are (or were) employed by Defendant, received cash payments in lieu of District-provided health insurance and/or additional compensation in lieu of Holidays, and worked statutory overtime during the same work period at any time since April 20, 2014.

## II.

## STATEMENT OF FACTS

Plaintiff is a member of Sacramento Area Fire Fighters, Local 522 ("Local 522"). (Declaration of Tracey Valentine in Support of Motion for Conditional Certification ("Valentine Decl."), ¶ 3.) Local 522 is the recognized exclusive employee organization for District employees in the Administrative Support Personnel ("ASP") bargaining unit, the Battalion Chief's Organization of the Sacramento Metropolitan Fire District ("Battalion Chiefs") bargaining unit, and the general bargaining unit ("Suppression"). (Valentine Decl., ¶ 4; Declaration of Ty Bailey in Support of Motion for Conditional Certification ("Bailey Decl."), ¶ 4.) Each bargaining unit (i.e., ASP, Battalion Chiefs, Suppression) has their own Memorandum of Understanding ("MOU") with the District which governs the terms and conditions of employment, including but not limited to compensation, applicable to all employees in each respective bargaining unit. (Valentine Decl., ¶ 5; Bailey Decl., ¶ 5.)

Plaintiff is currently employed by Defendant in the job classification of "Fire Captain." (Valentine Decl., ¶ 6.) Accordingly, the terms and conditions of Plaintiff's employment are governed by the Suppression MOU. (*Id.*)

**A.     District Employees in the ASP, Battalion Chiefs, and Suppression Bargaining Units Are Eligible to Receive Cash Payments In Lieu of District-Provided Health Insurance.**

Article 16 "Health Plans" of the Suppression MOU provides in relevant part, "Medical-in-lieu: All employees or retirees who opt out of health insurance as provided by the District shall receive $300 monthly in lieu of health insurance." (Valentine Decl., ¶ 7, Exhibit A, p. 4.) Pursuant to Article 16 "Health Plans" of the Suppression MOU, Plaintiff receives cash payments in the amount of $300 per month in lieu of District-provided health insurance. (Valentine Decl., ¶ 7.) Plaintiff has received such compensation over the time period relevant to this action pursuant to the applicable labor agreements between Local 522 and Defendant. (Valentine Decl., ¶ 8, Exhibit B, p. 2.) Plaintiff worked beyond statutory thresholds requiring overtime compensation under the FLSA during the time period relevant to this action. (Valentine Decl., ¶ 9.) However, Defendant failed to include the cash payments received by Plaintiff in lieu of District-provided health insurance in the calculation of her "regular rate" of pay for the purpose of determining her overtime compensation. (Valentine Decl., ¶10.)

The applicable labor contracts for the ASP bargaining unit and Battalion Chiefs bargaining unit contain identical pay provisions which provide represented employees the option to receive cash payments in lieu of District-provided health insurance. (Declaration of Ian B. Sangster in Support of Motion for Conditional Certification ("Sangster Decl."), ¶ 9,10; Exhibits C, p. 3; Exhibit D, p. 2-3.) Between the bargaining units, at least 79 current or former employees of Defendant have received cash payments in lieu of District-provided health insurance during the time period relevant to this action. (Sangster Decl., ¶ 21, Exhibit H, p. 1.)

Defendant does not include the cash payments received in lieu of District-provided health insurance in the "regular rate" of pay for the purpose of determining the overtime compensation for eligible employees. (Valentine Decl., ¶ 10, 14; Sangster Decl., ¶ 11, 12.) On August 10, 2017, Deputy Chief of Administration Greg Casentini sent a letter to Local 522 Metro Vice President Ty Bailey concerning changes to Defendant's payroll and overtime calculation practices. (Bailey Decl., ¶ 19, Exhibit D.) Specifically, Deputy Chief Casentini's letter outlined the changes Defendant plans to implement to include the cash payments in lieu of District-provided health insurance into the "regular

rate" of pay for purposes of calculating the overtime compensation of eligible District employees. (*Id.*, Exhibit D, p. 1.) To date, Defendant has not implemented the changes to its payroll and overtime calculation practices to include the cash payments in lieu of District-provided health insurance in the "regular rate" of pay. (Sangster Decl., ¶ 22.)

### B. Certain District Employees in the Suppression and Battalion Chiefs Bargaining Units Receive Additional Compensation In Lieu of Holidays.

Article 28 "Recognized Holidays" of the Suppression MOU provides in relevant part:

> All full-time suppression/shift employees, or suppression/shift employees assigned to days on a limited basis, shall receive as compensation for working on Holidays, an additional 144 hours of pay per year at the employee's base monthly compensation, inclusive of all incentives. The employee will sell all 144 hours of Holiday Leave on an annual basis. Hours may be sold in increments of 12 hours per month for 12 months, or however they choose, i.e. one lump sum, or any combination in 12 hours increments throughout the year. If a shift employee is hired at other than the first of the year the Holiday pay will be prorated based upon the hire date.

Pursuant to Article 28 "Recognized Holidays," Plaintiff has received cash payments in lieu of holidays ("HIL compensation"). (Valentine Decl., ¶ 11.) Plaintiff has received such compensation over the last three years pursuant to the applicable labor agreements between Local 522 and Defendant. (Valentine Decl., ¶ 12, Exhibit C, p. 6.) Plaintiff worked beyond statutory thresholds requiring overtime compensation under the FLSA during the time period relevant to this action. (Valentine Decl., ¶ 9.) However, Defendant failed to include Plaintiff's HIL compensation in the calculation of her "regular rate" of pay for the purpose of determining her overtime compensation. (Valentine Decl., ¶ 13.) Similar to Plaintiff, Defendant has failed to include the HIL compensation of other eligible District employees under the Suppression MOU in the calculation of their respective "regular rate" of pay for

the purpose of determining their overtime compensation or cashing out CTO due under the FLSA. (Bailey Decl., ¶ 14.)

The applicable labor contract for the Battalion Chiefs bargaining unit contains a similar pay provision which provides shift Battalion Chiefs with additional compensation in lieu of Holidays ("HIL compensation"). (Bailey Decl., ¶ 15.) Specifically, Article 26 "Holidays" was amended to provide in pertinent part:

> Shift Battalion Chiefs shall receive as compensation for working or responding to the off-duty needs of the District on District recognized holidays, an additional 144 hours off with pay per year. The employee will sell all 144 hours of Holiday Leave on an annual basis. Hours may be sold in increments of 12 hours per month for 12 months, or however they choose, *i.e.,*, one lump sum, or any combination in 12 hour increments throughout the year. If a shift employee is hired at other than the first of the year the Holiday pay will be prorated based upon the hire date.

(Bailey Decl., ¶ 15; Exhibit C, p. 3.)

Similar to eligible employees under the Suppression MOU, shift Battalion Chiefs under the Battalion Chief's MOU are subject to the District's practice of failing to include HIL compensation in the calculation of the "regular rate" of pay for the purposes of determining their respective overtime compensation or cashing out CTO due under the FLSA. (Bailey Decl., ¶ 16.)

### III.

### ARGUMENT

**A.  Conditional Certification is Appropriate Because Plaintiff is Similarly Situated to Other District Employees Subjected to the Same Unlawful Pay Provisions of Defendant.**

To certify a FLSA collective action, courts must evaluate whether the proposed lead plaintiffs and the proposed collective action group are "similarly situated" for purposes of § 216(b). A court's determination for conditional certification and issuance of a collective action notice is made "under a fairly lenient standard and typically results in conditional class certification." (*Leuthold v. Destination*

*America, Inc.* (C.D. Cal. 2004) 224 F.R.D. 462, 467; *Kress v. PricewaterhouseCoopers, LLP* (E.D. Cal. 2009) 263 F.R.D. 628.)

In determining whether to grant the motion, the court looks to the pleadings and any affidavits and evidence submitted by the parties in the noticed motion. (*Leuthold v. Destination America, Inc., supra*.) Notice is deemed proper where the plaintiffs make substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. (*Mooney v. Aramco Services Co.* (5th Cir. 1995) 54 F.3d 1207, 1214 (overruled on other grounds 539 U.S. 90 (2003); *Sperling v. Hoffman-LaRoche, Inc.* (3d Cir. 1988) 862 F.2d 439 (affirmed and remanded on other grounds, 493 U.S. 165); *Bishop v. Petro–Chem. Transp.*, LLC (E.D.Cal.2008) 582 F.Supp.2d 1290, 1294). To demonstrate similarity, "[a]ll that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." (*Hill v. R+L Carriers, Inc.* (N.D. Cal. 2010) 690 F. Supp. 2d 1001, 1009.) The "similarly situated" standard is satisfied for an FLSA overtime case where the potential plaintiffs share similar unlawful pay provisions to the named Plaintiff. (*Dybach v. Florida Department of Corrections* (11th Cir. 1991) 942 F.2d 1562, 1567-1568.)

In the instant action, Plaintiff has identified a legal and factual nexus binding together the proposed class - namely, Defendant's exclusion of certain remuneration from the "regular rate" of pay from District employees. Accordingly, Plaintiff respectfully submits this Court should grant conditional certification and authorize the issuance of facilitated notice of this suit to all individuals who received cash payments in lieu of District-provided health insurance and/or HIL compensation and worked overtime during the same work period while employed by Defendant at any time since April 20, 2014.

    **1.**    **Plaintiff is Similarly Situated to Other District Employees Who Receive Identical Cash Payments In Lieu of District-Provided Health Insurance.**

In *Flores v. City of San Gabriel* (9th Cir. 2016) 824 F. 3d 890, the Ninth Circuit held that the City's cash payments to police officers in lieu of medical benefits were not excludable from the calculation of the officers' regular rate of pay for overtime purposes under the FLSA. (*Id.* at 902.) Here,

Defendant failed to include the cash payments received by Plaintiff in lieu of District-provided health insurance from her "regular rate" of pay for purposes of calculating her overtime compensation. (Valentine Decl., ¶ 7-10.)

Pursuant to the applicable labor agreements, District employees in the ASP and Battalion Chiefs bargaining units are also eligible to receive such cash payments in lieu of District-provided health insurance. (Sangster Decl. ¶ 9,10; Exhibits C, p. 3; Exhibit D, p. 2-3.) During the relevant time period, at least 79 other District employees have received cash payments in lieu of District-provided health insurance. (Sangster Decl., ¶ 21, Exhibit H, p. 1.) To date, Defendant still does not include such payments in the "regular rate" of pay for purposes of calculating the overtime compensation of eligible District employees. (Bailey Decl., ¶ 19, Exhibit D; Sangster Decl., ¶ 22.) Accordingly, Plaintiff is "similarly situated" to such individuals who received cash payments in lieu of District-provided health insurance because all such District employees were subjected to Defendant's unlawful practice of excluding such remuneration from the "regular rate" of pay for purposes of calculating their respective overtime compensation.

### 2. Plaintiff is Similarly Situated to Other District Employees Who Receive HIL Compensation.

In *Hart v. City of Alameda* (N.D. Cal., June 17, 2009, No. C-07-5845MMC) 2009 WL 1705612, the court held that additional holiday compensation received by city police officers must be included in the officers' "regular rate" of pay. (*Id.* at 3.) The HIL compensation received by eligible District employees is essentially identical to the compensation provisions in *Hart* that the court held must be included in the "regular rate" of pay for the purpose of determining overtime compensation. (Bailey Decl., ¶ 17.) Here, as in *Hart*, Defendant failed to include the HIL compensation received by Plaintiff in her "regular rate" of pay for purposes of calculating her overtime compensation. (Valentine Decl., 11-13; Bailey Decl., ¶ 13-14, 16; Sangster Decl., ¶ 18-19.)

Pursuant to the Suppression MOU, all suppression/shift employees and suppression/shift employees assigned to days on a limited basis also receive HIL compensation. (Valentine Decl., ¶ 11, Exhibit A, p. 6; Bailey Decl., ¶ 10, Exhibit A, p. 4; Exhibit B, p. 6; Sangster Decl., ¶ 15-16; Exhibit A,

p. 6; Exhibit E, p. 6.) For example, Plaintiff Ty Bailey is employed by Defendant as a "Fire Captain" and also received HIL compensation during the time period relevant to this action. (Bailey Decl., ¶ 10-11.) Similar to Plaintiff, Defendant does not include Plaintiff Bailey's HIL compensation in the calculation of his "regular rate" of pay for the purposes of determining his overtime compensation. (Bailey Decl., ¶ 13.) Moreover, as the Sacramento Metropolitan Fire District unit Vice President of Local 522 ("Metro Vice President"), Plaintiff Bailey is personally familiar with Defendant's overtime practices pertaining to Local 522 members employed by Defendant. (Bailey Decl., ¶ 6-8.) In his role as Metro Vice President, Plaintiff Bailey has confirmed that other employees in job classifications under the Suppression MOU are subject to Defendant's practice of failing to include HIL compensation in the calculation of their respective "regular rate" of pay for purposes of determining their overtime compensation. (Bailey Decl., ¶ 14.)

Additionally, pursuant to the Battalion Chiefs MOU, all shift Battalion Chiefs also receive HIL compensation. (Bailey Decl., ¶ 15, Exhibit C, p. 3.) Defendant does not include the HIL compensation in the "regular rate" of pay for purposes of the overtime calculation of Battalion Chiefs either. (Bailey Decl., ¶ 14, 16.)

Based on the foregoing, Plaintiff is "similarly situated" to such individuals, including Plaintiff Bailey, who received HIL compensation because all such District employees were subjected to Defendant's unlawful practice of excluding such remuneration from the "regular rate" of pay for purposes of calculating their respective overtime compensation.

B. **Facilitated Notice is Necessary to Inform Potential Plaintiffs of the Instant Action.**

The Court should authorize the issuance of facilitated notice to ensure all potential plaintiffs become aware of this action to allow them the opportunity to opt-in to assert their claims. If an affected employee does not opt-in to the collective action, they cannot recover for any unpaid wages under the lawsuit filed. The discovery of a mailing list to send out the notice is a routine component of a notice motion. (*See Hoffman-La Roche, Inc. v. Sperling* (1989) 493 U.S. 165, 170.) Further, the court can impose "insubstantial" expenses upon a Defendant to effectuate notice. (*Oppenheimer Fund, Inc. v. Sanders* (1978) 437 U.S. 340, 359.)

To ensure all potential plaintiffs are aware of this case, the Court should order Defendant to identify all current or former employees who worked for Defendant since April 20, 2014 and received cash payments in lieu of District-provided health insurance and/or HIL compensation, worked overtime during the same work period, and send notice advising them of their right to opt-in. Plaintiff asks the Court to authorize the issuance of a "Hoffman-La Roche" notice in the form as proposed herein, to inform potential plaintiffs of their right to participate and opt-in to this action. As established in *Hoffman-La Roche, Inc., supra*, a plaintiff in an FLSA collective action is entitled to discover the names of all "similarly situated" individuals with similar claims. (*Id.* at 170.) Until a potential plaintiff opts-in to a collective action, their statute of limitations for recovery is not tolled. (29 U.S.C. §§ 216(b), 256(b).) In order to facilitate this process, a district court may authorize the parties to send notice to all potential plaintiffs. (*Does I thru XXIII v. Advanced Textile Corporation* (9th Cir. 2000) 214 F.3d 1058, 1064.)

Authorizing notice also serves judicial economy by consolidating similar claims into one collective action. (*Hoffman-LaRoche, Inc., supra*, at 172.) Rather than litigating multiple claims, the "[c]ourt authorization of notice serves the legitimate goal of avoiding the multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." (*Id.*) The district court's authority to facilitate notice assists "in the management of litigation...[b]y monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed." (*Id.* at 171-172.) The issuance of notice in this case is necessary as the potential plaintiffs have similar claims to the current Plaintiff.

All current and former employees of Defendant who received cash payments in lieu of District-provided health insurance and/or HIL compensation and worked overtime during the same work period since April 20, 2014 are subject to the same compensation practices as Plaintiff, and are therefore "similarly situated." These similarly situated persons should be promptly notified of this pending case so that they have the opportunity to opt-in. Plaintiff's pleadings and exhibits submitted herewith support an order by this Court directing the Defendant to provide notice to those similarly situated current employees, as well as similarly situated former employees employed by Defendant since April 20, 2014.

The proposed notice submitted herewith is appropriate and provides objective, accurate information to prospective opt-in plaintiffs regarding the nature of the lawsuit, the effect of the statute of limitations on their claims, and how to exercise their right to join. (*See* Proposed Notice, Exh. B.) Absent notification, numerous similarly situated individuals will be unaware of this pending litigation.

## IV.

## CONCLUSION

Granting this motion assists the Court in maintaining judicial efficiency over this FLSA collective action. Authorizing notice also furthers the purpose of the FLSA to inform potentially aggrieved employees of their right to participate in a collective action lawsuit to recover unpaid compensation due under federal law.

For the foregoing reasons, Plaintiff respectfully asks this Court grant this motion and issue an order conditionally certifying this action as a collective action; approving the language of the proposed notice; and requiring that notice to all persons similarly situated be effectuated in the manner set forth in the proposed order filed concurrently herewith.

Respectfully submitted,

Dated: September 22, 2017          **MASTAGNI HOLSTEDT, APC**

By: /s/ *Ian B. Sangster*
DAVID E. MASTAGNI, ESQ.
ISAAC S. STEVENS, ESQ.
ACE T. TATE, ESQ.
IAN B. SANGSTER, ESQ.
Attorneys for Plaintiffs