DAVID E. MASTAGNI, ESQ. (SBN 204244)
davidm@mastagni.com
ISAAC S. STEVENS, ESQ. (SBN 251245)
istevens@mastagni.com
ACE T. TATE, ESQ. (SBN 262015)
atate@mastagni.com
IAN B. SANGSTER, ESQ. (SBN 287963)
isangster@mastagni.com
**MASTAGNI HOLSTEDT**
A Professional Corporation
1912 "I" Street
Sacramento, California 95811
Telephone: (916) 446-4692
Facsimile: (916) 447-4614
Attorneys for Plaintiffs

MORIN I. JACOB, (SBN 204598)
mjacob@lcwlegal.com
LISA S. CHARBONNEAU (SBN 245906)
lcharbonneau@lcwlegal.com
**LIEBERT CASSIDY WHITMORE**
A Professional Law Corporation
135 Main Street, 7th Floor
San Francisco, California 94105
Telephone: 415.512.3000
Facsimile: 415.856.0306
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACEY VALENTINE, on behalf of herself and all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>SACRAMENTO METROPOLITAN FIRE DISTRICT,<br><br>Defendant. | Case No: 2:17-cv-00827-KJM-EFB<br><br>Complaint Filed: April 20, 2017<br><br>**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL OF CASE**<br><br>*[Filed concurrently with Declaration of David E. Mastagni; Declaration of Ian B. Sangster; Declaration of Michael D. Lee; Declaration of Patrick R. Barbieri; Declaration of Lisa S. Charbonneau; Declaration of Amanda Thomas; [Proposed] Order Approving Settlement Agreement and Dismissing Case with Prejudice]*<br><br>**Date:  November 2, 2018**<br>**Time:  10:00a.m.**<br>**Courtroom:  3, 15th Floor**<br>**Judge:  Hon. Kimberly Mueller** |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     STATEMENT OF RELEVANT FACTS ................................................................... 1

III.    LEGAL DISPUTE ..................................................................................................... 3

IV.     THE PARTIES' SETTLEMENT EFFORTS ............................................................ 4

V.      RELEVANT TERMS OF SETTLEMENT ............................................................... 5

VI.     LEGAL STANDARD ................................................................................................ 6

VII.    ARGUMENT ............................................................................................................. 7

        A.      Bona Fide Dispute............................................................................................ 7

        B.      The Proposed Settlement is a Fair and Reasonable Resolution of Plaintiffs'
                Claims ........................................................................................................... 10

                1.      Plaintiffs' Range of Possible Recovery .................................................. 10

                2.      The Stage of the Proceedings and the Amount of Discovery
                        Conducted ............................................................................................. 12

                3.      The Seriousness of the Litigation Risks Faced by the Parties .................. 13

                4.      The Scope of Any Release Provision in the Settlement Agreement......... 13

                5.      The Experience and Views of Counsel .................................................... 14

                6.      The Possibility of Fraud or Collusion ...................................................... 14

        C.      Attorneys' Fees and Costs .............................................................................. 15

VIII.   CONCLUSION ........................................................................................................ 18

JOINT MOTION FOR APPROVAL OF SETTLEMENT                              *Valentine, et al. v. SMFD*
AGREEMENT AND DISMISSAL OF CASE                    i                 Case No. 2:17-cv-00827-KJM-EFB
8683335.1 SA012-018

## TABLE OF AUTHORITIES

**Statutes**

29 U.S.C. § 207(a) ............................................................................................................ 2

29 U.S.C. § 216(b) ....................................................................................................... 9, 15

29 U.S.C. § 255(a) ............................................................................................................ 9

**Regulations**

29 C.F.R. § 553.230 .......................................................................................................... 2

29 C.F.R. § 778.113(b) ..................................................................................................... 8

**Cases**

*Barbosa v. Cargill Meat Sols. Corp.*
   297 F.R.D. 431 (E.D. Cal. 2013) .................................................................................. 17

*Bellinghausen v. Tractor Supply Co.*
   306 F.R.D. 245 (N.D. Cal. 2015) .................................................................................. 13

*Bond v. Ferguson Enters., Inc.*
   No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June 30, 2011) ......................... 17

*Callahan v. City of Sanger*
   No. 14-cv-600-BAM, 2015 WL 2455419 (E.D. Cal. May 22, 2015) ................................... 9

*Carson v. Billings Police Dept.*
   470 F.3d 889 (9th Cir. 2006) ........................................................................................ 17

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*
   No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016) ................................ 6

*Emmons v. Quest Diagnostics Clinical Labs, Inc.*
   No. 1:13–cv–00474–DAD– BAM, 2017 WL 749018 (E.D. Cal. Feb. 27, 2017) .................... 17

*Fernandez v. Victoria Secret Stores, LLC*
   2008 WL 8150856 (C.D. Cal. July 21, 2008) ................................................................ 16

*Flores v. City of San Gabriel*
   824 F. 3d 890 (9th Cir. 2016) ........................................................................................ 2

*Garcia v. Gordon Trucking, Inc.*
   2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ............................................................... 16

*Gong–Chun v. Aetna Inc.*
   No. 1:09–cv–01995–SKO, 2012 WL 2872788 (E.D. Cal. July 12, 2012) ........................... 17

*Goodwin v. Winn Mgmt. Grp. LLC*
   No. 1:15-cv-00606-DAD-EPG, 2018 WL 1036406 (E.D. Cal. Feb. 23, 2018) ..................... 16

*Hightower v. JPMorgan Chase Bank, N.A.*
   2015 WL 9664959 (C.D. Cal., Aug. 4, 2015) ............................................................... 16

*In re Bluetooth Headset Products Liability*
   654 F.3d 935 (9th Cir. 2011) ....................................................................................... 15

*In re Online DVD-Rental Antitrust Ltig.*
   779 F.3d 934 (9th Cir. 2015) ................................................................................... 15, 16

*Khanna v. Intercon Sec. Sys., Inc.*
   No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861 (E.D. Cal. Apr. 8, 2014) ........................ 7
   No. 2:09-CV-2214 KJM EFB, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015) ......................... 7
   No. CIV S-09-2214 KJM, 2013 WL 1193485 (E.D. Cal. Mar. 22, 2013) ........................... 6

*Knight v. Red Door Salons, Inc.*
   2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................................................................. 16

*Larsen v. Trader Joe's Co.*
   2014 WL 3404531 (N.D. Cal. Jul. 11, 2014) ............................................................... 14

*Linney v. Cellular Alaska P'ship*
   151 F.3d 1234 (9th Cir. 1998) .................................................................................... 12

*Local 246 Util. Workers Union of Am. v. S. California Edison Co.*
   83 F.3d 292 (9th Cir. 1996) .......................................................................................... 9

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*
  No. C 10-5243 SBA, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012) ........................................ 7
*Moreno v. Regions Bank*
  729 F.Supp.2d 1346 (M.D. Fla. 2010) .................................................................. 13
*Nen Thio v. Genji, LLC*
  14 F.Supp.3d 1324 (N.D. Cal. 2014) ..................................................................... 7
*Ogbuehi v. Comcast of California/Colorado/Florida/Oregon, Inc.*
  No. 2:13-CV-00672-KJM, 2015 WL 3622999 (E.D. Cal. June 9, 2015) .............................. 17
*Ontiveros v. Zamora*
  303 F.R.D. 356 (E.D. Cal. 2014) ........................................................................ 12
*Selk v. Pioneers Memorial Healthcare District*
  159 F.Supp.3d 1164 (S.D. Cal. 2016)........................................................... 6, 10, 15
*Singer v. Becton Dickinson and Co.*
  2010 WL 2196104 (C.D. Cal., April 24, 2014) ...................................................... 16
*Slezak v. City of Palo Alto*
  No. 16-CV03224-LHK, 2017 WL 2688224 (N.D. Cal. June 22, 2017)................ 10, 13, 14, 16
*Vasquez v. Coast Valley Roofing, Inc.*
  266 F.R.D. 482 (E.D. Cal. 2010) ........................................................................ 16
*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002) .......................................................................... 15
*Zakskorn v. Am. Honda Motor Co.*
  No. 2:11-cv-02610-KJM, 2015 WL 3622990 (E.D. Cal. June 9, 2015)................................ 17

JOINT MOTION FOR APPROVAL OF SETTLEMENT                    *Valentine, et al. v. SMFD*
AGREEMENT AND DISMISSAL OF CASE          iii          Case No. 2:17-cv-00827-KJM-EFB
8683335.1 SA012-018

# I.

## INTRODUCTION

Plaintiffs Tracy Valentine, *et al*. ("Plaintiffs") and Defendant Sacramento Metropolitan Fire District ("Defendant" or "District") (collectively the "Parties") respectfully move this Court to approve their conditional Settlement Agreement and dismiss this case with prejudice.  As discussed more fully below, the Parties' Settlement Agreement resolves a bona fide dispute between the Parties, provides for fair and reasonable compensation to each plaintiff based on the allegations set forth in the complaint and information discovered during discovery, and is fair and reasonable in terms of the attorney's fees and costs sought by Plaintiffs' counsel in connection with pursuing this litigation.  The Settlement Agreement, which is signed by all Plaintiffs and Defendant, is submitted to this Court as Exhibit A to the Declaration of David E. Mastagni in support of Joint Motion for Approval of Settlement Agreement and Dismissal of Case ("Mastagni Dec."), ¶ 16.)

# II.

## STATEMENT OF RELEVANT FACTS

Defendant is a fire protection district that provides fire protection and emergency medical services to the Sacramento metropolitan area.  Plaintiffs are or were employed by Defendant as firefighters, fire engineers, fire captains, fire inspectors, emergency medical technicians, paramedics, fire mechanics, and other miscellaneous fire personnel.  (Declaration of Amanda Thomas in support of Joint Motion for Approval of Settlement Agreement and Dismissal of Case ("Thomas Dec."), ¶3.)  At all times relevant to this case, Plaintiffs were non-exempt and entitled to overtime compensation under the Fair Labor Standards Act ("FLSA").

During the relevant time period, Plaintiffs' exclusive bargaining representative was and continues to be the Sacramento Area Fire Fighters, Local 522 ("Local 522"), which negotiates the labor agreements (referred to as memoranda of understanding or "MOU") applicable to Plaintiffs.  (Mastagni Dec., ¶ 4.)  One contractual term negotiated by Local 522 is that Plaintiffs may waive District-provided medical insurance and receive a cash payment of $300 per month

in lieu of medical insurance ("cash-in-lieu").  (*Id.* at ¶ 5.)  Another contractual term negotiated by Local 522 is holiday pay in lieu of paid holidays off for firefighters on fire suppression shifts.[1]  (*Id.* at ¶ 6.)  Specifically, fire suppression employees are entitled to 144 hours of holiday leave per year that they must sell back to the District (or cash-out) over the course of each calendar year ("holiday-in-lieu").  (*Id.* at ¶ 6.)

At all times relevant to this case, Plaintiffs have worked overtime as that term is defined under 29 U.S.C. section 207 of the FLSA, i.e. hours actually worked in a work period in excess of the applicable FLSA maximum hours threshold ("FLSA overtime"),[2]  and overtime as that term is defined in their respective MOUs ("MOU overtime").  (Thomas Dec., at ¶6.)   At all times relevant herein, Defendant paid Plaintiffs one and one-half times the District's premium overtime rate for all overtime hours worked (both FLSA and MOU).   (Thomas Dec., at ¶7.)

In June 2016, the Ninth Circuit held that cash payments made to employees who waive an employer's health insurance coverage ("cash-in-lieu") must be included in overtime pay rates under the FLSA.  (*Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016).)   Shortly thereafter, the Parties began discussions as to whether and how the District's cash-in-lieu payments would be included in recipients' overtime rates.  (Mastagni Dec., ¶ 7.)  In February 2017, the Parties had not come to agreement over the District's compliance with *Flores* as it related to either the FLSA overtime rate or the MOU overtime rate. Accordingly, Local 522 filed an internal grievance.  (Mastagni Dec., ¶ 8.)  Although the Parties continued discussions on these issues, no resolution was reached and this lawsuit was filed in April 2017.  (Dkt. No. 1.) In or around August 2017, counsel for Plaintiffs raised the issue as to whether the FLSA

---

[1] District employees engaged in fire suppression are scheduled for 24-hour shifts and are not entitled to paid holidays off.  (Thomas Dec., at ¶4.)  Non-fire suppression employees are generally scheduled for forty hour workweeks and are entitled to paid holidays off. (*Id.*)

[2] Under the FLSA employees who actually work more than forty hours in a seven-day workweek are entitled to premium overtime pay at a rate of one and one half times their "regular rate of pay."  (29 U.S.C. section 207(a).) Pursuant to 29 U.S.C. section 207(k), certain fire protection employees are eligible for a partial overtime exemption under which an eligible fire protection employee may work higher hours in a longer period of time without triggering their employer's overtime obligations under the FLSA.  Here, the District has established a twenty-four day 207(k) work period for all eligible fire protection personnel.  (Thomas Dec., at ¶5.)  The maximum hours threshold for such a work period is 182 hours actually worked in each twenty-four day period.  (29 C.F.R. section 553.230.)

1  required District "holiday-in-lieu" pay to be included in overtime rates.  (Mastagni Dec., ¶ 10.)

2  In or around February 2018, the District began including cash-in-lieu into recipients' MOU and

3  FLSA overtime rates.  (Thomas Dec., at ¶7.)

### III.

### LEGAL DISPUTE

As pled in their complaint, Plaintiffs contend the overtime rate (i.e. "regular rate of pay") Defendant paid to each Plaintiff was miscalculated, resulting in underpayment of overtime. (Dkt. No. 1.)   Specifically, Plaintiffs contend that Defendant's overtime rate should have incorporated cash-in-lieu and holiday-in-lieu payments and that the District's failure to do so resulted in unpaid overtime pay.  (Mastagni Dec., ¶ 9.)  In their complaint, Plaintiffs have sought three-years of back overtime pay, liquidated damages, and reasonable attorneys' fees and costs under the FLSA.  (Dkt. No. 1.)

On May 11, 2017, Defendant filed an Answer denying Plaintiffs' material claims and asserting various affirmative defenses.  (Dkt. No. 7.)  Defendant disputes that holiday-in-lieu pay must be included in overtime rates under the FLSA, disputes the applicable statute of limitations, disputes that liquidated damages may be recovered, and generally disputes whether any back overtime pay is owed under the FLSA due to the more generous compensation arrangements negotiated by Local 522 in Plaintiffs' MOUs.   (Declaration of Lisa S. Charbonneau in support of Joint Motion for Approval of Settlement Agreement and Dismissal of Case ("Charbonneau Dec."), ¶¶4-6.)

Plaintiffs' complaint was pled as a collective action on behalf of all similarly situated individuals who were employed by the Defendant over the last three years, worked overtime, and received the above-referenced remuneration.  (Dkt. No. 1.)  On October 17, 2017, this Court conditionally certified the matter as an FLSA collective action.  (Dkt. No. 28.)  Defendant sent notice to putative collective action members pursuant to this Court's Order, and a total of 534

1    current and former District employees opted into this suit. (Mastagni Dec., ¶ 11.)[3]

2                                  **IV.**

3                    **THE PARTIES' SETTLEMENT EFFORTS**

4            In recognition of the high costs of litigation and in an effort to secure harmonious labor

5    relations, the Parties have been engaged in ongoing arms-length negotiations regarding

6    settlement and resolution of these matters since 2016.  (Mastagni Dec., ¶ 12; Charbonneau Dec.,

7    ¶¶7-13.)   As part of these efforts, the Parties informally exchanged significant amounts of

8    relevant payroll and timekeeping data and presented each other with relevant legal authority in

9    support of their respective positions before finally compromising on their respective positions.

10   (Mastagni Dec., ¶ 12; Charbonneau Dec., ¶10.)  In addition, pursuant to Court Order dated July

11   6, 2017, the Parties participated in a Settlement Conference before Judge Claire that took place

12   on February 8, 2018 and February 15, 2018.  (Dkt. Nos. 14, 58, 60.)  (Mastagni Dec., ¶ 13;

13   Charbonneau Dec., ¶10.)   Over the course of two (2) full days, Judge Claire facilitated

14   discussion between the Parties to achieve settlement of this case.   (Mastagni Dec., ¶ 14;

15   Charbonneau Dec., ¶¶10.)   In addition to addressing the allegations set forth in Plaintiffs'

16   complaint, the settlement negotiations before Judge Claire included other pending disputes

17   between Local 522 and the District concerning the calculation and payment of overtime

18   compensation.  (Mastagni Dec., ¶ 14; Charbonneau Dec., ¶ 11.)  By the end of the second full

19   day, the Parties had agreed in principle to the material terms of a settlement that would resolve

20   all the disputed issues related to the calculation and payment of overtime compensation under

21   the FLSA and Plaintiffs' respective MOUs. (Mastagni Dec., ¶ 15; Charbonneau Dec., ¶12.)

22           Between February and the present, the Parties painstakingly calculated back pay

23   amounts, drafted contract language, checked and double-checked their efforts, and finally

24   reached agreement on all aspects of the settlement. (Mastagni Dec., ¶ 16; Charbonneau Dec., ¶

25   13; Thomas Dec., ¶8.)

26

27   _____
     [3] On September 21, 2018, the Parties jointly moved to dismiss 16 Plaintiffs from this action. (Dkt. No. 69; Mastagni
     Dec., ¶ 11.)

28

# V.

## RELEVANT TERMS OF SETTLEMENT

As a result of the efforts summarized above, the Parties have agreed to settle this matter for a total sum of $1,376,827.22.  This settlement amount includes all amounts to be paid by Defendant to Plaintiffs, attorneys' fees and costs inclusive, to resolve this matter.  Key details of the settlement terms are as follows:

- Defendant will pay back overtime pay due to cash-in-lieu recipients for the period from April 20, 2014  until January 2018[4] using the more generous overtime practices set forth in Plaintiffs' MOUs, as opposed to what is required under the FLSA;

- Defendant will pay two years of back overtime pay due to holiday-in-lieu recipients using the definition of overtime set forth in Plaintiffs' MOUs, as opposed to what is required under the FLSA;

- Defendant will incorporate holiday-in-lieu pay into its overtime calculation using a methodology that will more than meet its minimum FLSA obligations, effective March 2018 and until at least January 2021;[5]

- Defendant will pay Plaintiff Tracey Valentine $1,000 in recognition of her appointment as collective action representative;

- Of the total settlement amount, $275,165.44 is allocated to Plaintiffs' counsel for attorneys' fees and costs, which represents approximately 20% of the total settlement amount;

- The Parties agree that relevant provisions in Plaintiffs' MOUs related to overtime will remain in full force and effect until January 2021;

- Plaintiffs agree to release all overtime claims against Defendant under any legal theory relating to or arising from this Action, including but not limited to breach of contract and

---

[4] As mentioned above, Defendant began incorporating cash-in-lieu into MOU and FLSA overtime rates in February 2018.
[5] This is valued at approximately $500,000 in additional overtime compensation paid to District employees per year. (Thomas Dec., ¶9.);

the Fair Labor Standards Act, and agree to dismiss the *Valentine* lawsuit with prejudice and to effectuate dismissal of their pending overtime grievance with prejudice. (Mastagni Dec., ¶ 17.)

Prior to executing the above-referenced release, each individual Plaintiff had a full and fair opportunity to consult with Plaintiffs' counsel.  (Mastagni Dec., ¶ 18.)  Every individual Plaintiff voluntarily agreed to accept the terms of the Settlement Agreement and executed separate "Settlement Agreement and Release" documents to that end. (*Id.*).

## VI.

## LEGAL STANDARD

Settlement of collective action claims under the FLSA requires court approval.  (*Selk v. Pioneers Memorial Healthcare District*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016).)   The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved.  (*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016).)  However, in this circuit, district courts have normally applied a widely-used standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute.  (*Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk,* 159 F.Supp.3d at 1172.)  "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." (*Id.* [internal quotation marks and citation omitted].)   A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute.  (*Id.*)

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions.  (*Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013).)   To determine

whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." (*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), order corrected, No. 2:09-CV-2214 KJM EFB, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015).)

With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." (*Id.*) Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved to promote the efficiency of encouraging settlement of litigation. (*McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).)

## VII

## ARGUMENT

In order to approve the settlement in the instant case, the Court must find that (1) the case involves a bona fide dispute, (2) the proposed settlement agreement is fair and reasonable, and (3) the award of attorney's fees and costs are reasonable.

### A. Bona Fide Dispute

The Court should approve the proposed Settlement Agreement because it resolves a bona fide dispute between the Parties regarding legitimate questions over the existence and extent of Defendant's liability. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." (*Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1333 (N.D. Cal. 2014); *Lynn's Food Stores*, 679 F.2d at 1353 n.8 (requiring "settlement

1   of a bona fide dispute between the Parties with respect to coverage or amount due under the

2   [FLSA]").)  The purpose of this analysis is to ensure that an employee does not waive claims for

3   wages, overtime compensation, or liquidated damages when no actual dispute exists between

4   the Parties.  (*Ibid.*)

5          Here, a bona fide dispute exists over the forms of compensation that must be included in

6   the "regular rate" used to compensate overtime hours under the FLSA.  While the Parties do not

7   dispute that under *Flores v. City of San Gabriel,* 824 F.3d 890 (9th Cir. 2016), cash-in-lieu must

8   be included in the "regular rate" used to compensate employees for overtime hours worked,

9   Defendant disputes that holiday-in-lieu pay must be included.  (Mastagni Dec., ¶ 20;

10  Charbonneau Dec., ¶ 4.)  The treatment of holiday-in-lieu pay under the FLSA has not been

11  addressed by the Ninth Circuit and is currently being litigated in numerous California District

12  courts.  (See *Aboudara, et al. v. City of Santa Rosa*, Case No. 4:14-cv-01661-HSG (N.D. Cal.);

13  *Lewis, et al. v. County  of Colusa*, Case No. 2:16-cv-01745-VC (E.D. Cal.); *McKinnon et al. v.*

14  *City of Merced*, Case No. 1:18-cv-01124-LJO-SAB (E.D. Cal.); *Burris v. City of Petaluma,*

15  Case No. 4:18-cv-02102-HSG (N.D. Cal.).)  While Plaintiffs believe their holiday-in-lieu claims

16  are meritorious, Defendant disagrees.  (Mastagni Dec., ¶ 20; Charbonneau Dec., ¶¶4-5.)  Given

17  that the Ninth Circuit – nor any other circuit court – has not yet ruled on this issue, Plaintiffs'

18  holiday-in-lieu claims are not as strong as their cash-in-lieu claims.

19          In addition, the Parties also disagree over the proper methodology used to calculate

20  overtime owed under the FLSA.  Whereas Plaintiffs assert that their overtime rates – and back

21  overtime pay – should be calculated based on the method set forth by the Department of Labor

22  (DOL) at 29 C.F.R. section 778.113, Defendant asserts that under the FLSA, Plaintiffs'

23  overtime rates should be calculated pursuant to DOL regulations at 29 C.F.R. sections 778.109-

24  110.  (Mastagni Dec., ¶ 20; Charbonneau Dec., ¶ 14.)  The Parties also dispute the proper

25  multiplier to apply to each overtime hour.  Whereas Defendant contends the "half-time" method

26  is all that is required under the FLSA, Plaintiffs disagree.  (Mastagni Dec., ¶ 20; Charbonneau

27  Dec., ¶ 14.)  The application of one calculation method and/or one multiplier over another has a

28

1    significant effect on the amount of overtime owed.   Plaintiffs estimate that if Defendant

2    prevailed on these issues, Plaintiffs' damages would be reduced by over 66%.   (Mastagni Dec.,

3    ¶ 20; Charbonneau Dec., ¶ 15.)

4        Moreover, the Parties dispute whether the Plaintiffs are entitled to liquidated damages.

5    29 U.S.C. section 216(b) provides that "an employer who violates the Act shall be liable for

6    unpaid overtime compensation plus an additional equal amount as liquidated damages." (*Local*

7    *246 Util. Workers Union of Am. v. S. California Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996).)

8    However, liquidated damages may be avoided if the employer can establish "subjective and

9    objective good faith in its violation of the FLSA."   (*Id.*)  With regard to Plaintiffs' cash-in-lieu

10   claim, because the *Flores* case was one of first impression, Defendant has a non-frivolous

11   defense to liquidated damages. (See *Callahan v. City of Sanger*, No. 14-cv-600-BAM, 2015 WL

12   2455419, at *13-14 (E.D. Cal. May 22, 2015) – no liquidated damages warranted because law

13   prior to *Flores* was unsettled regarding cash-in-lieu, thus failure to include it in the overtime

14   rate was a good faith error; *see also Slezak v. City of Palo Alto*, 2017 WL 2688224, *2 (N.D.

15   Cal. 2017) – because law was not settled before *Flores*, there is a non-frivolous defense as to

16   whether liquidated damages are owed.)  Similarly, the lack of Ninth Circuit guidance regarding

17   the FLSA treatment of holiday-in-lieu pay renders Plaintiffs' recovery of liquidated damages on

18   that claim more uncertain still.   Therefore, Defendant's liability for liquidated damages is

19   disputed.  If liquidated damages were denied, Plaintiffs' range of recovery would be reduced by

20   50%.

21       Finally, there is a dispute as to the applicable statute of limitations.  Generally, the FLSA

22   has a two-year statute of limitations.  (29 U.S.C. § 255(a).)  However, if the violation of the

23   FLSA is willful, the statute of limitations extends to three years.  (*Id.*)  The burden is on the

24   employee(s) to show a willful violation.  The issue of willfulness involves a similar inquiry as

25   good faith.  "An employer's violation of the FLSA is "willful" when it is "on notice of its FLSA

26   requirements, yet [takes] no affirmative action to assure compliance with them. [Citations

27   omitted.]" (*Flores, supra* at 906.)  Here, the *Flores* case was one of first impression and once

28

1   the decision was issued, the District began discussions with Local 522 about how and whether

2   to include cash-in-lieu in recipients' overtime rates.  Further, the Ninth Circuit has not issued a

3   decision regarding holiday-in-lieu.   Given these facts, Plaintiffs may not prevail on their

4   willfulness argument – especially as it pertains to their holiday-in-lieu claim.

5           Based on the foregoing, it is respectfully submitted that the Settlement Agreement

6   resolves a bona fide dispute between the Parties.

7   **B.      The Proposed Settlement is a Fair and Reasonable Resolution of Plaintiffs' Claims**

8           To determine whether a FLSA settlement is fair and reasonable, courts evaluate the

9   "totality of the circumstances" within the context of the purposes of the FLSA.  (*Slezak v. City*

10  *of Palo Alto,* No. 16-CV03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017).)

11  Courts in the Ninth Circuit have considered the following factors when determining whether a

12  settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery;

13  (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the

14  litigation risks faced by the parties; (4) the scope of any release provision in the settlement

15  agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs;

16  and (6) the possibility of fraud or collusion.  (*See Selk*, 159 F.Supp.3d at 1173.)

17          **1.   Plaintiffs' Range of Possible Recovery**

18          Under the FLSA, the maximum amount a plaintiff can recover is twice the amount of

19  underpaid wages for the three year period prior to opting into the lawsuit (i.e., an award of

20  liquidated damages coupled with a finding the violation was willful).  Here, Plaintiffs who

21  received cash-in-lieu are recovering damages beginning April 20, 2014, which exceeds the

22  maximum recovery period for most Plaintiffs because it reaches back three (3) years before the

23  date the Complaint was filed, (see Dkt. No. 1), not their respective opt-in dates. (*See* Mastagni

24  Dec., ¶ 21; Dkt. Nos. 1, 5, 6, 10, 12, 17, 22, 26, 31, 34-37, 39-45, 47-57.)  With respect to their

25  holiday-in-lieu back pay claim, Plaintiffs are recovering damages based on a two (2) year time

26  period, i.e., the typical statute of limitations under the FLSA, or pro rata portion thereof.

27  (Mastagni Dec., ¶ 21.)

28

1    Plaintiffs agreed to forego liquidated damages in exchange for damages based upon

2    MOU overtime hours (instead of the smaller number of FLSA-qualifying overtime hours) and

3    the District's agreement not to assert offsets and credits it would otherwise be legally entitled to

4    under 29 U.S.C. section 207(h)(2) for payment of non-FLSA overtime (i.e., MOU overtime).

5    (Mastagni Dec., ¶ 22; Charbonneau Dec., ¶17.)  Because the relevant MOUs count most paid

6    time off as "hours worked" for purposes of determining overtime compensation, the use of

7    MOU-defined overtime hours results in greater recovery for Plaintiffs as compared to that

8    which is recoverable under the FLSA.  (Thomas Dec., ¶6.)  Moreover, Defendant's agreement

9    not to assert any offsets and/or credits to reduce liability also increased Plaintiffs' recovery.

10   (Mastagni Dec., ¶ 22.)  The Parties also reached compromise on their respective positions on

11   how the overtime rate should be calculated.  (Mastagni Dec., ¶ 23; Charbonneau Dec., ¶ 17.)

12   Absent compromise, the dispute over the proper method of calculating the overtime rate would

13   shift liability in the case by over 66% depending upon the Court's resolution of this single

14   disputed issue.  (Mastagni Dec., ¶ 20; Charbonneau Dec., ¶ 15.)

15   Taken together, these terms of the Settlement Agreement provide Plaintiffs with prompt,

16   significant, and certain recovery, especially given the risks presented by continued litigation.

17   While the Ninth Circuit's mandate in *Flores* made it likely that Plaintiffs would prevail in at

18   least some respect at trial, multiple issues exist that could significantly reduce the ultimate

19   recovery at trial, including the possibility that this Court would rule that holiday-in-lieu pay

20   need not be included in the regular rate.  In that case, the vast majority of Plaintiffs would be

21   ineligible to receive any recovery and the damages would be reduced by over $1,000,000.00.

22   (Mastagni Dec., ¶ 24.)  Further, even if the Court found that holiday-in-lieu must be included in

23   the regular rate, the Court could find that Defendant's alleged violation was not willful, thus

24   only a two-year statute of limitations would apply.  Moreover, the Court could find that

25   Defendant's conduct, even if in violation of the FLSA, was in good faith, which would prevent

26   Plaintiffs from recovering liquidated damages.  These issues affect the total liability regardless

27

28

of the overtime calculation method applied.  A denial of liquidated damages alone would reduce the range of Plaintiffs' potential recovery by 50%.  (Mastagni Dec., ¶ 20.)

Although many of the above-referenced risks primarily involve a decrease in the potential award rather than a verdict of no liability, the risk of a lesser recovery favors settlement. The settlement affords the Plaintiffs prompt, substantial relief, while avoiding significant legal and factual hurdles that otherwise may have prevented the Plaintiffs from obtaining as favorable a recovery.  While counsel for both Parties believe their positions on the above are meritorious, they are experienced and realistic, and understand that the resolution of the foregoing and other key issues, the outcome of a trial, and the outcome of any appeals that may follow, are inherently uncertain in terms of both outcome and duration.  (Mastagni Dec., ¶ 25; Charbonneau Dec., ¶ 16.)   Accordingly, this factor weighs in favor of approval of the settlement because the interests of the Plaintiffs are better served by settlement than the attendant risks of further litigation.

### 2.   The Stage of the Proceedings and the Amount of Discovery Conducted

Courts assess the stage of the proceedings and the amount of discovery completed to ensure that parties have an adequate appreciation of the merits of the case before reaching a settlement. (*See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution.").)  As long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. (*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).)

Here, the Parties have sufficient information to make an informed decision regarding settlement.  Specifically, Plaintiffs propounded discovery to obtain the necessary evidence (i.e., time and payroll records) to form an adequate appreciation of the merits of the cases before reaching the proposed settlement.   (Mastagni Dec., ¶ 19.)   The Parties also informally exchanged significant amounts of relevant payroll and timekeeping data.  (Mastagni Dec., ¶ 12.) Accordingly, this factor also weighs in favor of settlement.

### 3.   The Seriousness of the Litigation Risks Faced by the Parties

Settlement is favored where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." (*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015).)   As discussed in greater detail above, although liability is certain with respect to Plaintiffs' cash-in-lieu claims, it is less certain with respect to the holiday-in-lieu claims.   Additionally, and as discussed above, there are a number of variables that could impact the calculation of damages in this case.   First, Plaintiffs may not recover at trial any damages based upon the District's alleged willfulness (which would reduce the recovery period in the proposed settlement from three (3) years to two (2) years) or the District's alleged lack of good faith, which would reduce the claimed damages by 50%.   Should Plaintiffs not prevail on these issues, their recovery would be significantly diminished.   Second, the District's position on how back overtime pay must be calculated will significantly affect Plaintiffs' recovery.   If the District were to prevail in this regard, again, Plaintiffs' recovery would be diminished by over 66%.   Additionally, at trial Defendant would be able to assert offsets and/or credits, thus further reducing any recovery.   All of these concerns pose a risk to Plaintiffs that could decrease their overall recovery.   Accordingly, this factor also weighs in favor of approval of settlement.

### 4.   The Scope of Any Release Provision in the Settlement Agreement

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." (*Slezak*, 2017 WL 2688224, at *5.)   Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. (*See Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled.").)

Here, the release "extends only to all grievances, disputes or claims… arising from or attributable to Plaintiffs' FLSA and/or MOU overtime claims related to or arising from this Action up to and including the Effective Date of this Agreement." (Mastagni Decl., ¶ 16,

Exhibit A, pp. 3-4.)  In fact, the release itself confirms that "this release does **not** include claims relating to conduct or activity not attributable to Plaintiffs' FLSA and/or MOU overtime claims relating to or arising from this Action…" (Emphasis added.) (*Id.*)  Such a narrowly-tailored and carefully drawn release favors approval of settlement.

### 5.  The Experience and Views of Counsel

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." (*Larsen v. Trader Joe's Co.*, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014).)  Here, Plaintiffs' counsel David Mastagni asserts that the terms of the Settlement Agreement are fair and reasonable, and that the settlement amount is within the maximum range that Plaintiffs could expect to recover if this matter were to proceed to trial. (Mastagni Dec., ¶¶ 20, 24-25.)  David Mastagni has years of experience litigating FLSA claims and has settled multiple FLSA claims and obtained court approval of those settlements. (Mastagni Dec., ¶ 2.)  As such, his evaluation of the case is reliable.

Collectively and individually, counsel for Defendant have years of experience advising public agencies on FLSA matters and defending public agencies in FLSA lawsuits. (Charbonneau Dec., ¶ 2.)  Based on this experience, it is the position of defense counsel that this settlement is fair and reasonable and will have a materially beneficial effect on Plaintiffs' compensation – retroactively and prospectively.  (Charbonneau Dec., ¶¶ 16-18.)

Given the above, this factor also weighs in favor of approval of the settlement.

### 6.  The Possibility of Fraud or Collusion

"The likelihood of fraud or collusion is low . . . [when] the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator."  (*Slezak*, 2017 WL 2688224, at *5.)  Here, at all times, settlement negotiations have been at arms-length and there has been no fraud or collusion.  (Mastagni Dec., ¶ 12; Charbonneau Dec., ¶ 7.)  Moreover, Magistrate Judge Claire oversaw two-full days of settlement negotiations as a neutral mediator and significantly contributed to achieving this global accord. (Mastagni Dec., ¶¶ 14, 15.) In

addition, each Plaintiff has been provided with a copy of the settlement and has had an opportunity to review it and discuss it with their representatives.  (Mastagni Dec., ¶ 18.)  After doing so, each Plaintiff voluntarily agreed the terms of the Settlement Agreement, as well as their individual settlement amounts, by executing individual "Settlement Agreement and Release" pages. Approval by all of the more than 500 Plaintiffs further supports a finding that counsel did not collude, or otherwise allow self-interest to infect the settlement negotiations. Accordingly, this factor also weighs in favor of approval.

**C.    Attorneys' Fees and Costs**

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award."  (*Selk*, 159 F.Supp.3d at 1180; *see also* 29 U.S.C. § 216(b) (providing that, in an FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action").)  "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method for awarding attorneys' fees."  (*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).)

The Ninth Circuit has generally set a 25% benchmark for the award of attorneys' fees in common fund cases.  (*Id*. at 1047-48; *see also In re Bluetooth Headset Products Liability*, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25 percent of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."))  Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis.  (*Vizcaino*, 290 F.3d at 1048-50; *see also In re Online DVD-Rental Antitrust Ltig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).)  Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." (*Vizcaino*, 290 F.3d at 1048.)  The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular

1  percentage recovery of a common fund.  (*Id.* at 1050 ("Where such investment is minimal, as in

2  the case of an early settlement, the lodestar calculation may convince a court that a lower

3  percentage is reasonable.  Similarly, the lodestar calculation can be helpful in suggesting a

4  higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779

5  F.3d at 955.)

6          Pursuant to the Settlement Agreement, Plaintiffs' counsel will be paid $275,165.44 in

7  attorneys' fees and costs, and Plaintiffs will receive $1,101,661.78.  Thus, attorneys' fees and

8  costs represent less than 20% of the total recovery.  20% for attorneys' fees and costs is below

9  the presumptively reasonable benchmark, as well as awards allowed in similar cases.  (*See*

10  *Slezak*, 2017 WL 2688224, at *3 (approving attorneys' fees and costs award of $52,069 in a

11  settlement of a FLSA collective action, which was 31% of the total settlement amount);

12  *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856 (C.D. Cal. July 21, 2008)

13  (awarding 34% of the common fund in attorneys' fees in a wage and hour class action

14  settlement); *Hightower v. JPMorgan Chase Bank, N.A.* 2015 WL 9664959 (C.D. Cal., Aug. 4,

15  2015) (approving attorneys' fees of 30% of the settlement fund); *Garcia v. Gordon Trucking,*

16  *Inc.*, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) (approving fees in the amount of 33% of the

17  common fund); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *17 (N.D. Cal. Feb. 2,

18  2009) ("nearly all common fund awards range around 30 percent"); *Vasquez v. Coast Valley*

19  *Roofing, Inc.*, 266 F.R.D. 482, 491–92 (E.D. Cal. 2010) (*citing* to wage and hour cases where

20  courts approved awards ranging from 30 to 33%); *Singer v. Becton Dickinson and Co.* 2010 WL

21  2196104 (C.D. Cal., April 24, 2014), at *8 (approving an attorneys' fee award of 33.33%); *Selk*,

22  159 F.Supp 3d at 1180 (approving attorneys' fees and costs award of $22,000 in a settlement of

23  a FLSA collective action, which was 45% of the total settlement amount); *Goodwin v. Winn*

24  *Mgmt. Grp. LLC*, No. 1:15-cv-00606-DAD-EPG, 2018 WL 1036406, at *7 (E.D. Cal. Feb. 23,

25  2018) (approving attorneys' fees of $75,000 in a settlement of a class action and FLSA

26  collective action, which was 30% of the total settlement amount).)

27

28

1    Calculation of the lodestar amount may be used as a cross-check to assess the

2    reasonableness of the percentage award.  (*Bond v. Ferguson Enters., Inc.*, No. 1:09–cv–1662

3    OWW MJS, 2011 WL 2648879, at *11 (E.D. Cal. June 30, 2011).)   When using a lodestar as a

4    cross-check, courts "may use a rough calculation of the lodestar."  (*Id.* at *12.)   Here, the

5    attorneys' fees and costs provided by the Settlement Agreement are below Plaintiffs' counsel's

6    lodestar.

7    Prevailing parties are entitled to receive an award of fees for all hours reasonably

8    expended at rates in line with the "prevailing market rate of the relevant community."  (*Carson v.*

9    *Billings Police Dept.,* 470 F.3d 889, 891 (9th Cir. 2006).)   This Court has previously accepted

10   hourly rates of $650 per hour for an attorney with 19 years of experience, $250 per hour for an

11   attorney with two (2) years of experience, and $150-175 per hour for paralegals as reasonable for

12   purposes of calculating a lodestar to cross-check a common fund recovery. (*Ogbuehi v. Comcast*

13   *of California/Colorado/Florida/Oregon, Inc.,* No. 2:13-CV-00672-KJM, 2015 WL 3622999, at

14   *12 (E.D. Cal. June 9, 2015); *see also Zakskorn v. Am. Honda Motor Co.*, No. 2:11-cv-02610-

15   KJM, 2015 WL 3622990, at *15 (E.D. Cal. June 9, 2015) where this Court calculated an adjusted

16   lodestar by assigning hourly rates of $540-695 for partners and $300-490 for associates, and

17   multiplying by the individual attorney's hours as represented in their respective declarations).)

18   Other courts in the Eastern District have approved similar rates in various class action settings.

19   (*See Emmons v. Quest Diagnostics Clinical Labs, Inc.*, No. 1:13–cv–00474–DAD– BAM, 2017

20   WL 749018, at *8 (E.D. Cal. Feb. 27, 2017) approving between $370 and $495 for associates,

21   and between $545 and $695 for senior counsel and partners); *Barbosa v. Cargill Meat Sols.*

22   *Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for

23   attorneys with two to eight years of experience, and $720 per hour for attorney with 21 years of

24   experience); *Gong–Chun v. Aetna Inc.*, No. 1:09–cv–01995–SKO, 2012 WL 2872788, at *23

25   (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between

26   $490 and $695 per hour for senior counsel and partners).)

27

28

1    Applying the hourly rates previously used by this Court to calculate a lodestar in line with

2    the prevailing rates in the Eastern District (i.e., $540-$695 for partners and $300-$490 for

3    associates) to the hours reasonably expended on this matter to date by Plaintiffs' primary counsel

4    alone, partner David E. Mastagni and associate Ian B. Sangster, would result in a fee in the range

5    of $280,722.00 to $417,129.50.[6] (Mastagni Dec., ¶ 28; Sangster Dec., ¶ 5.)  In addition to Mr.

6    Mastagni and Mr. Sangster, several other attorneys from the Mastagni law firm performed

7    billable work on this case, as did the firm's paralegals and accountant.  (Mastagni Dec., ¶ 27;

8    Lee Dec., ¶ 7; Barbieri Dec., ¶ 3.)  Instead of seeking amounts for other counsel and staff work

9    via the lodestar method, Plaintiffs' counsel seeks a total of $275,165.44 for *all* firm time,

10   including paralegals and a forensic accountant.  Accordingly, comparison with the lodestar

11   method also supports this award of less than 20% of the fund.

## VIII.

## CONCLUSION

14   Based on the foregoing, the Parties respectfully request this Court approve the proposed

15   Settlement Agreement.

16                             Respectfully submitted,

17   Dated: September 28, 2018      **MASTAGNI HOLSTEDT, APC**

18                             By: */s/ David E. Mastagni*

19                             DAVID E. MASTAGNI
                          ISAAC S. STEVENS

20                             ACE T. TATE
                          IAN B. SANGSTER

21                             Attorneys for Plaintiffs

22   Dated: September 28, 2018      **LIEBERT CASSIDY WHITMORE**

23                             By: */s/ Morin I. Jacob*
                          MORIN I. JACOB

24                             LISA S. CHARBONNEAU
                          Attorneys for Defendant

25

26

27

28   [6] ($540 x 221.30) + ($300 x 537.40) = $280,722.00; ($695 x 221.30) + ($490 x 537.40) = $417,129.50.