DAVID E. MASTAGNI, ESQ. (SBN 204244)
ISAAC S. STEVENS, ESQ. (SBN 251245)
ACE T. TATE, ESQ. (SBN 262015)
IAN B. SANGSTER, ESQ. (SBN 287963)
**MASTAGNI HOLSTEDT**
A Professional Corporation
1912 "I" Street
Sacramento, California 95811
Telephone: (916) 446-4692
Facsimile: (916) 447-4614
davidm@mastagni.com
istevens@mastagni.com
atate@mastagni.com
isangster@mastagni.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACEY VALENTINE, on behalf of herself and all similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>SACRAMENTO METROPOLITAN FIRE DISTRICT,<br><br>Defendant. | Case No: 2:17-cv-00827-KJM-EFB<br><br>Complaint Filed: April 20, 2017<br><br>**DECLARATION OF DAVID E. MASTAGNI IN SUPPORT OF JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL OF CASE**<br><br>Date:  November 2, 2018<br>Time:  10:00a.m.<br>Courtroom:  3, 15th Floor<br>Judge:  Hon. Kimberly Mueller |

I, David E. Mastagni, declare:

1. I am an attorney at law duly licensed to practice in the State of California and am admitted to practice before the Eastern District of California. I am a partner with the law firm of Mastagni Holstedt, APC, attorneys of record for Plaintiffs Tracey Valentine, et al. ("Plaintiffs"). If called upon to testify, I could and would competently testify to the following facts from my own personal knowledge.

2. I have over seventeen years of experience litigating wage and hour and employment law matters. Over the course of my career, I have litigated and settled numerous lawsuits alleging violations of the Fair Labor Standards Act ("FLSA") including: *Fay, et al. v.*

1  *The Wackenhut Corporation, et al.* (San Mateo County Superior Court) which resulted in a $1,750,000.00 settlement; *Gupton v. Tri Counties Bank* (Butte County Superior Court (consolidated cases)), resulting in a class action settlement of $1,900,000.00; *Khanna, et. al. v. Intercon Security Systems, Inc.*, an FLSA/state law hybrid settlement for $390,000.00; *Abubakar, et al. v. County of Solano,* a court approved FLSA settlement of $1,425,000.00; *Anderson, et al. v. County of Tulare*, a court approved FLSA settlement of $1,100,000.00; *Alba v. City and County of San Francisco*, a court approved FLSA settlement of approximately $625,000.00; *Abbott v. County of Sacramento*, a court approved FLSA settlement of approximately $900,000.00; *Mountain View Firefighters v. City of Mountain View*, an FLSA settlement of approximately $550,000.00; *Atencio, et. al. v. City of Azusa,* a court approved FLSA settlement of over $1,500,000.00; *Beidleman v. City of Modesto*, a court approved FLSA settlement for approximately $143,500.00; *Blanco, et. al. v. City of Rialto,* a court approved FLSA settlement of approximately $2,900,000.00; *Brunker, et. al. v. Bay Area Rapid Transit,* a court approved FLSA settlement of approximately $300,000.00; *Hilliard v. City of Upland*, a court approved FLSA settlement for approximately $108,000.00; and *Seguin. et. al. v. County of Tulare*, a court approved FLSA settlement for approximately $270,000.00.

3. Since 2012, I have been a contributing author for the Midwinter Treatise Supplement: The Fair Labor Standards Act published by the American Bar Association, Section of Labor and Employment Law, Fair Labor Standards Act Subcommittee. On April 21, 2017, I was a speaker at State Bar of California, Labor & Employment Law Section 23rd Annual Public-Sector Conference class titled "Overtime pay for cash in lieu payments to employees? Navigating the complex world of FLSA compliance post Flores v. City of San Gabriel."

4. Local 522 of the International Association of Firefighters, AFL-CIO ("Local 522") is the exclusive recognized employee organization for Sacramento Metropolitan Fire District ("District") employees in the Administrative Support Personnel ("ASP") bargaining unit, the Battalion Chief's Organization of the Sacramento Metropolitan Fire District ("Battalion Chiefs") bargaining unit, and the general bargaining unit for the District's fire suppression employees, which includes firefighters, fire engineers, and fire captains ("Suppression"). Each

bargaining unit (i.e., ASP, Battalion Chiefs, Suppression) has their own Memorandum of Understanding ("MOU") with the District which governs the terms and conditions of employment, including but not limited to compensation, applicable to all employees in each respective bargaining unit.

5. One contractual term negotiated by Local 522 in each bargaining unit's respective MOU is the option for employees to receive a cash payment of $300 per month in lieu of medical insurance ("cash-in-lieu").

6. Another contractual term negotiated by Local 522 in the Battalion Chiefs and Suppression MOUs is holiday pay in lieu of paid holidays for employees on fire suppression shifts. Specifically, fire suppression employees are entitled to 144 hours of holiday leave per year that they must sell back to the District (i.e., cash out) over the course of each calendar year ("holiday-in-lieu").

7. In June 2016, the Ninth Circuit held that cash payments made to employees who waive an employer's health insurance must be included in overtime pay rates under the FLSA. Shortly thereafter, the Parties began discussions as to whether and how the District's cash-in-lieu payments would be included in recipients' overtime rates.

8. In February 2017, the Parties had not come to agreement over the District's compliance with *Flores* as it related to either the FLSA overtime rate or the MOU overtime rate. Accordingly, Local 522 filed a grievance.

9. On April 20, 2017, I filed a lawsuit on behalf of Tracey Valentine and all similarly situated individuals (the "Valentine Action") alleging the District ("Defendant") failed to include all statutorily required forms of compensation in the "regular rate" used to calculate overtime compensation.

10. Further investigation led to the identification of another item of compensation being excluded from the calculation of the "regular rate." Specifically, Defendant excluded holiday-in-lieu payments from the "regular rate" of employees engaged in fire suppression duties. I raised this issue with counsel for the District in or around August 2017.

11. On October 17, 2017 this Court conditionally certified this matter as an FLSA collective action. Defendant sent notice to putative collective action members pursuant to this Court's Order, and a total of 534 current and former District employees opted into this suit. On September 21, 2018, the Parties moved to dismiss 16 plaintiffs from this action because they either did not receive at least one of the disputed pay provisions (i.e., cash-in-lieu or holiday-in-lieu pay) or work qualifying overtime under the terms of the Settlement Agreement.

12. Local 522 and the District have been engaged in ongoing arms-length negotiations regarding settlement and resolution of all these matters since 2016. As part of these efforts, the Parties informally exchanged significant amounts of relevant payroll and timekeeping data and presented each other with relevant legal authority in support of their respective positions.

13. In addition to the informal attempts to resolve these matters, the Parties participated in a Settlement Conference before Magistrate Judge Allison Claire. I attended on Plaintiffs' behalf along with my associate Ian Sangster.

14. Over the course of two (2) full days, Judge Claire facilitated discussion between the Parties over the following disputes: (1) what remuneration must be included in the "regular rate"; (2) the proper methodology for calculating the "regular rate"; (3) Defendant's entitlement to reduce any liability through offsets and/or credits; (4) Plaintiffs' entitlement to liquidated damages; and (5) the applicable statute of limitations. In addition to the allegations set forth in Plaintiffs' complaint, Judge Claire facilitated discussions over other pending disputes between Local 522 and the District concerning the calculation and payment of overtime compensation, including but not limited to the grievance filed in February 2017.

15. By the end of the second full day, the Parties reached an agreement in principle on the material terms of a settlement that would resolve all the disputed issues between them related to the calculation and payment of overtime compensation under the FLSA and the respective MOUs. I believe Judge Claire significantly contributed to achieving this global accord.

16. Subsequent to the Settlement Conference, the Parties memorialized their accord in a long-form Settlement Agreement. The Parties also calculated back pay amounts, drafted

contract language, checked and double-checked their efforts, and finally reached agreements on all aspects of the settlement. A true and correct copy of the Settlement Agreement is attached hereto as "Exhibit A." A true and correct copy of the "Master Agreement" between Local 522 and the District resolving all the pending disputes related to the calculation and payment of overtime compensation is attached as an exhibit to the Settlement Agreement.

17. As a result of the efforts summarized above, the Parties agreed to settle this matter for a total sum of $1,376,827.22. Key details of the settlement agreement include the following:

(1) Defendant will pay back overtime due to cash-in-lieu recipients for the period from April 20, 2014 until January 2018 using the more generous overtime practices set forth in Plaintiffs' respective MOUs, as opposed to what is required under the FLSA;

(2) Defendant will pay two years of back overtime pay due to holiday-in-lieu recipients using the definition of overtime set forth in Plaintiffs' respective MOUs, as opposed to what is required under the FLSA;

(3) Defendant will incorporate holiday-in-lieu payments into its overtime calculation using a methodology that will more than meet its minimum FLSA obligations, effective March 2018 and until at least January 2021;

(4) Defendant will pay Plaintiff Tracey Valentine $1,000 in recognition of her appointment as collective action representative;

(5) Of the total settlement amount, $275,165.44 is allocated to Plaintiffs' counsel for attorneys' fees and costs, which represents approximately 20% of the total settlement amount;

(6) The Parties agree that relevant provisions in Plaintiffs' MOUs related to overtime will remain in full force and effect until January 2021;

(7) Plaintiffs agree to release all overtime claims against Defendant under any legal theory relating to or arising from this Action, including but not limited to breach of contract and the FLSA, and agree to dismiss the *Valentine* lawsuit with prejudice and to effectuate dismissal of their pending overtime grievance with prejudice.

18. Prior to executing the above-referenced release, each individual Plaintiff had a

full and fair opportunity to consult with Plaintiffs' counsel.  Every individual Plaintiff voluntarily agreed to accept the terms of the Settlement Agreement and executed separate "Settlement Agreement and Release" documents to that end.

19. Throughout this litigation, my law firm worked to investigate the claims, defenses, and potential damages to inform the litigation strategy. The Parties diligently participated in discovery to obtain the time and payroll records necessary to assess the potential value of the claims of the Plaintiffs as well as other documents and information to evaluate Defendant's affirmative defenses.

20. I am familiar with the terms of the Parties' Settlement Agreement. In my experience, the terms of the Settlement Agreement are fair and reasonable, and the settlement amount is within the maximum range that Plaintiffs would expect to recover if this matter were to proceed to trial. My analysis in this respect entails a comparison of the amount of the proposed settlement with the amount of damages Plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing on each disputed issue.  Specifically, the following bona fide disputes between the Parties all necessarily affected the existence and extent of Defendant's liability:

(1) The Parties disagreed over the forms of compensation that must be included in the "regular rate" used to compensate overtime hours under the FLSA.  While Defendant acknowledged cash-in-lieu must be included in the "regular rate," it disputed that holiday-in-lieu must be included.

(2) Of further significant impact, the Parties disputed the method of how to calculate the FLSA liability. Plaintiffs asserted throughout this litigation that damages should be calculated based on the method for salaried, non-exempt employees prescribed in 29 C.F.R. section 778.113, which uses the regularly scheduled hours as the divisor to determine the "regular rate" before making the time and one-half calculation.  However, Defendant consistently maintained that Plaintiffs are only entitled to the calculation for a flat sum bonus as set forth in 29 C.F.R. section 778.110(b), which uses all hours worked (including overtime hours) to calculate the "regular rate," and only applies the "regular

rate" to the premium (i.e., 0.5) portion of the overtime hours. The application of one method over another has a significant effect on the amount of overtime owed. As a practical matter, were the District to prevail on this issue, Plaintiffs' damages would be reduced by over 66%.

(3) The Parties also disputed whether the Plaintiffs are entitled to liquidated damages. If liquidated damages were denied, Plaintiffs' range of recovery would be reduced by 50%.

(4) The Parties also disputed the applicable statute of limitations. Plaintiffs asserted Defendant's violations were willful, thus extending the statute of limitations from two to three years. Defendant disagreed, asserting only a two year statute of limitations applied.

21. Under the FLSA, the maximum recovery period is three years prior to opting into the lawsuit. Plaintiffs who received cash-in-lieu are recovering damages beginning April 20, 2014, which exceeds the maximum recovery period for most Plaintiffs because it reaches back three (3) years before the date the Complaint was filed, not their respective opt-in dates. Plaintiffs who received holiday-in-lieu are recovering damages based on a two (2) year time period, or pro rata portion thereof (i.e., the typical statute of limitations under the FLSA).

22. Under the FLSA, the maximum amount a plaintiff can recover is twice the amount of underpaid wages (i.e., an award of liquidated damages). Here, Plaintiffs agreed to forego liquidated damages in exchange for damages based upon MOU overtime hours (instead of the smaller number of FLSA qualifying overtime hours) and the District's agreement not to assert offset and credits it would otherwise be legally entitled to for payment of non-FLSA overtime (i.e., MOU overtime). Because the relevant MOUs count most paid time off as "hours worked" for purposes of determining overtime compensation, the use of MOU-defined overtime hours resulted in a greater recovery. Defendant's agreement not to assert any offsets and/or credits also increased Plaintiffs' recovery.

23. The Parties also reached compromise on their respective positions regarding how the overtime rate should be calculated.

24. Taken together, the terms of the Settlement Agreement provide the Plaintiffs prompt, significant, and certain recovery, while avoiding significant legal and factual hurdles

that otherwise may have prevented the Plaintiffs from obtaining as favorable a recovery, including the possibility that the Court would rule that holiday-in-lieu pay need not be included in the "regular rate."  In that case, the vast majority of Plaintiffs would be ineligible to receive any recovery and the damages would be reduced by over $1,000,000.00.

25. While I believe the collective claims are meritorious, I am experienced and realistic, and understand that the resolution of the disputed issues, the outcome of a trial, and the outcome of any appeals that may follow are inherently uncertain in terms of both outcome and duration.  Accordingly, based on my experience in class and collective action litigation, I believe the settlement provides a fair recovery in light of the risk to Plaintiffs.

26. Throughout this litigation, Plaintiffs' counsel worked to minimize time and costs in the interests of receiving a favorable result for the Plaintiffs.  In my professional judgment, my associates and I litigated the case efficiently, and the hours we spent on the case were reasonably necessary to its effective and successful prosecution.  My overall experience and participation in this case has significantly contributed to the result.

27. I have personally reviewed the itemization of the work performed in the above-mentioned case. The following reflects the work performed by all attorneys and staff in this case to date:

    A.    David P. Mastagni - Partner

          Total Hours:  3.60

    B.    David E. Mastagni - Partner

          Total Hours: 221.30

    C.    Kathleen N. Mastagni Storm – Partner

          Total Hours: 4.40

    D.    Isaac S. Stevens - Senior Associate

          Total Hours: 1.30

    E.    Ace T. Tate - Associate

          Total Hours: 6.80

    F.    Ian B. Sangster - Associate

Total Hours: 537.40

G. Michael Lee - Forensic Accountant

Total Hours: 47.15

F. Patrick Barbieri - Paralegal

Total Hours: 92.50

G. Todd Thomas - Paralegal

Total Hours: 15.51

28. Applying the hourly rates previously used by this Court to calculate a lodestar in line with the prevailing rates in the Eastern District (i.e., $540-$695 for partners and $300-$490 for associates) to the hours reasonably expended on this matter to date by Plaintiffs' primary counsel, myself and associate Ian B. Sangster, would result in a range of fees from $280,722.00 on the low end to $417,129.50 on the high end. (*See Zakskorn v. Am. Honda Motor Co.*, No. 2:11-cv-02610-KJM, 2015 WL 3622990, at *15 (E.D. Cal. June 9, 2015).) Instead, my law firm seeks approval of a substantially reduced amount ($275,165.44) for *all* firm time expended on this matter, including hours reasonably expended by paralegals and a forensic accountant.

I declare, under the penalty of perjury, under the laws of the United States that the foregoing statements are true and correct, and if called to testify as to these facts, I could and would do so. Executed on September 28, 2018 in Sacramento, California.

By: __/s/ David E. Mastagni_____
     DAVID E. MASTAGNI