UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACEY VALENTINE, on behalf of herself and all similarly situated individuals, | No. 2:17-cv-00827-KJM-EFB |
| Plaintiffs, | ORDER |
| v. | |
| SACRAMENTO METROPOLITAN FIRE DISTRICT, | |
| Defendant. | |

In this collective action under the Fair Labor Standards Act, the parties have submitted the instant motion for final approval of the collective action settlement. Under the settlement agreement, defendants agreed to pay a total sum of $1,376,827.22. For the reasons discussed below, the court GRANTS the joint motion for approval of the settlement agreement and dismissal of the case.

I.      BACKGROUND

        Defendant is a fire protection district that provides fire protection and emergency medical services to the Sacramento metropolitan area. Joint Mot. for Approval of Settlement Agreement ("Motion"), ECF No. 70 at 5.[1]  Plaintiffs are or were employed by defendant as

_____

[1] All page numbers of filings refer to the ECF pagination and not to the internal pagination of the

1

firefighters, fire engineers, fire captains, fire inspectors, emergency medical technicians, paramedics, fire mechanics, and other miscellaneous fire personnel. *Id.* At all times relevant to this case, plaintiffs were nonexempt and entitled to overtime compensation under the Fair Labor Standards Act ("FLSA"). *Id.*

Many details of plaintiffs' compensation are governed by union-negotiated labor agreements, referred to as memoranda of understanding or "MOU." *Id.* Two MOU provisions are relevant here: First, plaintiffs may waive district-provided medical insurance and receive a cash payment of $300 per month in lieu of medical insurance ("cash-in-lieu"). *Id.* at 5–6. Second, firefighters on fire suppression shifts may receive holiday pay in lieu of paid holidays off ("holiday-in-lieu"). *Id.*

In June 2016, the Ninth Circuit held that cash payments made to employees who waive an employer's health insurance coverage ("cash-in-lieu") must be included in overtime pay rates under the FLSA. *Flores v. City of San Gabriel*, 824 F.3d 890, 907 (9th Cir. 2016). Shortly thereafter, the parties began discussions as to whether and how the District's cash-in-lieu payments would be included in recipients' overtime rates. Mot. at 6. Because the parties were unable to agree, plaintiffs filed this lawsuit on April 20, 2017. *See* Compl., ECF No. 1.

In their complaint, plaintiffs contend the overtime rate (the "regular rate") defendant paid to each plaintiff was miscalculated, resulting in underpayment of overtime. *Id.* ¶ 2. Specifically, plaintiffs contend that defendant's overtime rate should have incorporated cash-in-lieu and holiday-in-lieu payments and that the District's failure to do so resulted in unpaid overtime. *Id.* Plaintiffs seek three-years of back overtime pay, liquidated damages, and reasonable attorneys' fees and costs under the FLSA. *Id.*

Plaintiffs brought this collective action on behalf of all similarly situated individuals who were employed by the defendant over the last three years, worked overtime, and received the above-referenced remuneration. *Id.* ¶¶ 22–49. On October 17, 2017, this court conditionally certified the matter as an FLSA collective action. Order, ECF No. 28. After

document.

1    defendant sent notice to putative collective action members, a total of 534 current and former

2    District employees opted into this suit.  Mot. at 7–8.  After preliminary settlement negotiations

3    and the exchange of informal discovery, the parties participated in court-convened settlement

4    conferences on February 8 and 15, 2018.  *See* ECF Nos. 58, 60.  After reaching a settlement

5    agreement, the parties filed the instant joint motion for approval of the agreement and dismissal

6    of the case.  *See* Mot.

7    II.      KEY TERMS OF THE SETTLEMENT

8              The key terms of the proposed settlement are as follows:

9    1.   The parties have agreed to settle the matter for a total sum of $1,376,827.22, which

10        "includes all amounts to be paid by Defendant to Plaintiffs, attorneys' fees and costs

11        inclusive, to resolve this matter."  Mot. at 9.

12   2.   Defendant will pay back overtime pay due to cash-in-lieu recipients for the period

13        from April 20, 2014 until January 2018 using the more generous overtime practices set

14        forth in plaintiffs' MOUs, as opposed to what is required under the FLSA.  *Id.*

15   3.   Defendant will pay two years of back overtime pay due to holiday-in-lieu recipients

16        using the definition of overtime set forth in plaintiffs' MOUs, as opposed to what is

17        required under the FLSA.  *Id.*

18   4.   Defendant will incorporate holiday-in-lieu pay into its overtime calculation using a

19        methodology that will more than meet its minimum FLSA obligations, effective

20        March 2018 and until at least January 2021.  *Id.*

21   5.   Defendant will pay plaintiff Tracey Valentine $1,000 in recognition of her

22        appointment as collective action representative.  *Id.*

23   6.   Of the total settlement amount, $275,165.44 is allocated to plaintiffs' counsel for

24        attorneys' fees and costs, which represents approximately 20 percent of the total

25        settlement amount.  *Id.*

26   7.   The parties agree that relevant provisions in plaintiffs' MOUs related to overtime will

27        remain in full force and effect until January 2021.  *Id.*

28   /////

3

1     8. Plaintiffs agree to release all overtime claims against defendant under any legal theory

2        relating to or arising from this action, including but not limited to breach of contract

3        and the FLSA, and agree to dismiss the Valentine lawsuit with prejudice and to

4        effectuate dismissal of their pending overtime grievance with prejudice. *Id.*

5    III.     <u>APPROVAL OF FLSA SETTLEMENTS</u>

6        Congress's purpose in enacting the FLSA was to protect workers from substandard

7 wages and oppressive working hours. *Barrentine v. Arkansas–Best Freight System*, 450 U.S. 728,

8 739 (1981)). "Because an employee cannot waive claims under the FLSA, [the claims] may not

9 be settled without supervision of either the Secretary of Labor or a district court." *Beidleman v.*

10 *City of Modesto*, No. 116-cv-01100-DAD-SKO, 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13,

11 2018) (citing *Barrentine*, 450 U.S. at 740). A court may not approve a FLSA settlement without

12 determining whether it is "a fair and reasonable resolution of a bona fide dispute." *Nen Thio v.*

13 *Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (citation omitted); *see also Khait v.*

14 *Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010)

15 ("Courts approve FLSA settlements when they are reached as a result of contested litigation to

16 resolve bona fide disputes.") (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350,

17 1353 n.8 (11th Cir. 1982)). Additionally, "[a]s part of the inquiry to determine whether

18 a FLSA settlement is fair, a district court 'must consider the proposed service payments to

19 the named plaintiff and the attorneys' fees.'" *Fontes v. Drywood Plus, Inc.*, No. CV-13-1901-

20 PHX-LOA, 2013 WL 6228652, at *6 (D. Ariz. Dec. 2, 2013) (internal quotation marks and

21 citation omitted).

22     A.     Bona Fide Dispute

23        "A bona fide dispute exists when there are legitimate questions about the existence

24 and extent of Defendant's FLSA liability." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F.

25 Supp. 3d 1164, 1172 (S.D. Cal. 2016) (internal quotation marks and citation omitted). When

26 there is certainty that the FLSA entitled plaintiffs to the compensation they seek, a court will not

27 approve a settlement, because it would shield employers from the full cost of complying with the

28 statute. *Id.* (citation omitted).

4

1            Here, a bona fide dispute exists over the forms of compensation that must be

2 included in the "regular rate" used to compensate overtime hours under the FLSA in light of

3 *Flores*. Mot. at 12 (citing *Flores*, 824 F.3d at 907). While the parties agree that defendant is

4 required to include cash-in-lieu in the "regular rate," the parties dispute whether holiday-in-lieu

5 pay should also be included in the rate. *Id.* This particular issue has not been addressed by the

6 Ninth Circuit and is currently being litigated in several California district courts. *Id.* (citing

7 *Aboudara, et al. v. City of Santa Rosa*, No. 4:17-cv-01661-HSG[2] (N.D. Cal.); *Lewis, et al. v. Cty.*

8 *of Colusa*, No. 2:16-cv-01745-VC (E.D. Cal.); *McKinnon et al. v. City of Merced*, No. 1:18-cv-

9 01124-LJO-SAB (E.D. Cal.); *Burris v. City of Petaluma*, case no. 4:18-cv-02102-HSG (N.D.

10 Cal.)).[3] Because treatment of holiday-in-lieu pay is uncertain, the parties' disagreement over its

11 inclusion in the "regular rate" constitutes a bona fide dispute.

12            Additionally, the parties have a bona fide dispute over the appropriate method to

13 calculate overtime owed under the FLSA. *Id.* Plaintiffs favor the method for salaried, non-

14 exempt employees prescribed in 29 C.F.R. § 778.113, which uses regularly scheduled hours as

15 the divisor to determine the "regular rate" before making the time and one-half calculation.

16 Defendant argues for the method set forth in the regulation that applies to hourly rate employees,

17 29 C.F.R. § 778.110(b). This method uses all hours worked, including overtime hours, to

18 calculate the "regular rate," and only applies the "regular rate" to the premium (i.e., 0.5) portion

19 of the overtime hours. Mastagni Decl. ¶ 20.

20            The parties also have a bona fide dispute over liquidated damages because of

21 defendant's potential "good faith" defense. Mot. at 13; *see also Beidleman*, 2018 WL 1305713,

22 _____

[2] The parties incorrectly cite the case number as 4:14-cv-01661-HSG.

23

24 [3] In two cases, courts have reached a substantive decision, and both have sided with plaintiffs
regarding holiday-in-lieu pay. *See* Order, *Lewis, et al. v. Cty. of Colusa*, No. 2:16-cv-01745-VC
(E.D. Cal. April 3, 2018), ECF No. 80 (granting partial summary judgment to plaintiffs, finding

25 defendant did not show its "biannual lump-sum holiday in-lieu payments . . . fall 'plainly and
unmistakably within the . . . terms and spirit'" of 29 U.S.C. § 207(e)(6) and § 207(e)(2)); Order,

26 *McKinnon et al. v. City of Merced*, case no. 1:18-cv-01124-LJO-SAB (E.D. Cal. Dec. 17, 2018),

27 ECF No. 20 (denying defendants motion to dismiss, finding that defendant's holiday pay structure
does not fall under the exception in § 207(e)(2)). Nevertheless, these decisions do not render

28 defendant's liability certain, given the absence of controlling authority on the issue.

at *3 (holding bona fide dispute existed over plaintiff's right to liquidated damages for failure to include cash-in-lieu when calculating overtime because defendants may have "acted in good faith" given "the uncertainty in the law prior to the Ninth Circuit's decision in *Flores*") (citation omitted). Though liquidated damages are the norm, *see Local 246 Util. Workers Union of Am. v. S. California Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996), the law on cash-in-lieu payments as part of the "regular rate" was unsettled prior to *Flores*. Mot. at 13. As such, defendants may have a defense to liquidated damages because of "subjective and objective good faith in [their] violation of the FLSA." *Id.*; *see also Seguin v. Cty. of Tulare*, No. 1:16-cv-01262-DAD-SAB, 2018 WL 1919823, at *3 (E.D. Cal. Apr. 24, 2018) (finding bona fide dispute existed over whether defendant would be subject to liquidated damages, given uncertainty in law prior to *Flores*). The same may hold true for the holiday-in-lieu claim given the issue has yet to be addressed by the Ninth Circuit. *See* Mot. at 13. Thus, a bona fide dispute exists over whether plaintiffs are entitled to liquidated damages.

Finally, there is a dispute as to the applicable statute of limitations, because the FLSA limitation extends one extra year if an employer's FLSA violation is "willful." 29 U.S.C. § 255(a). The uncertainty of the law with respect to cash-in-lieu and holiday-in-lieu payments brings into question whether defendant acted in willful violation of the FLSA, because defendant may not have been "on notice of its FLSA requirement" at the time the violation occurred. *See* Mot. at 13–14 (citing *Flores*, 824 F.3d at 960).

### B.    Fair and Reasonable

To determine whether a FLSA settlement is fair and reasonable, the court evaluates the "totality of the circumstances" within the context of the FLSA framework. *Selk*, 159 F. Supp. 3d at 1173. The court must consider the following factors when determining whether a settlement is fair and reasonable under the FLSA:

> (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views

of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.

*Id.* The court addresses each of these factors below.

                    1.       Plaintiffs' Range of Possible Recovery

Plaintiffs' maximum recovery for a violation of the FLSA, including an award of liquidated damages and an extended statute of limitations, is twice the amount of unpaid wages for the three-year period prior to opting into the lawsuit. Mot. at 14. While the parties do not provide the court with a figure for this maximum amount here, they do explain how the settlement amount was calculated, which aids the court in testing the reasonableness of the recovery. *See* Mot. at 15–16; *Beidleman*, 2018 WL 1305713, at *3 ("In light of the complexity of this case and the difficulty the parties face in estimating the likely value of plaintiffs' claim without conducting an exact calculation, the court finds the rationale underlying the agreement and the recovery obtained as a result to be reasonable."). The parties represent that plaintiffs who received cash-in-lieu payments will receive damages for the period beginning three years before the complaint was filed.[4] *See* Mot. at 14. Plaintiffs who received holiday-in-lieu payments will receive damages based on a two-year period or a pro rata portion thereof if the plaintiff did not work and/or receive holiday-in-lieu payments for two full years. *Id.* These damages will be calculated using the number of overtime hours worked under the definition in the parties' MOU, rather than the smaller number of FLSA-qualifying overtime hours. *Id.* at 15. In exchange for the more

---

[4]     The parties imply this amount exceeds the maximum recovery period for the cash-in-lieu plaintiffs because "it reaches back three (3) years before the Complaint was filed, not their respective opt-in dates." Mot. at 14. The parties do not cite any case law for the proposition that plaintiffs would normally only be entitled to damages for the period of three years before their opt-in date, rather than the date of the filing of the complaint. Rather, courts routinely calculate damages using the date of the filing of the complaint. *See Haro v. City of Los Angeles*, 745 F.3d 1249, 1258 (9th Cir. 2014) ("[FLSA] plaintiffs can recover for unlawfully withheld overtime pay for two years back from the filing date of a cause of action.") (citing 29 U.S.C. § 255(a)); *Yu Xuan v. Joo Yeon Corp.*, No. 1:12-CV-00032, 2016 WL 9022781, at *9 (D. N. Mar. I. Nov. 22, 2016) (calculating liquidated damages dating back three years, using date complaint filed); *Serv. Employees Int'l Union, Local 102 v. Cty. of San Diego*, 784 F. Supp. 1503, 1506 (S.D. Cal. 1992), *rev'd on other grounds*, 35 F.3d 483 (9th Cir. 1994) (holding that, because violation was willful, plaintiffs were entitled to damages for three years prior to the filing of the complaint).

generous definition of overtime hours, the plaintiffs have foregone liquidated damages. *Id.* The

parties also compromised on how to calculate the overtime rate. *Id.* Finally, defendants agreed

not to "assert any offsets and/or credits to reduce liability," which also increases plaintiff's

recovery. *Id.*

Though the decision in *Flores* strongly suggests defendants would be liable on

plaintiffs' cash-in-lieu claim, several variables, namely the bona fide disputes discussed above,

impact the certainty of calculating damages in this case. *See Beidleman*, 2018 WL 1305713, at

*3. For example, because plaintiffs' entitlement to liquidated damages is in dispute, it is

reasonable for plaintiffs to settle for less than the maximum recovery, especially because they are

still receiving more than just the underpaid wages. Similarly, plaintiffs risked an adverse court

finding on defendants' willfulness, thereby limiting plaintiffs' damages to two years. Thus, it is

reasonable that plaintiffs would settle for less than the maximum time period for damages, but

more than the minimum of two years.

Because the settlement is well above the minimum recovery, but below the

maximum, the compromise is fair given the uncertainties of the case. Moreover, at the hearing

the parties explained that, in addition to the FLSA claims, the parties resolved various labor

disputes between defendant and the class. The fact that the settlement included a more global

resolution of issues further favors approval. For all these reasons, this factor weighs in favor of

approving the settlement.

2.      Stage of Proceedings and Amount of Discovery Completed

"The court is also to evaluate the stage of the proceedings and the amount of

discovery completed in order to ensure that 'the parties carefully investigated the claims before

reaching a resolution.'" *Beidleman*, 2018 WL 1305713, at *4 (quoting *Ontiveros v. Zamora*, 303

F.R.D. 356, 371 (E.D. Cal. 2014)). "This factor will weigh in favor of approval if the parties

have sufficient information to make an informed decision regarding settlement." *Id.* (citing

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

Here the parties have engaged in some formal discovery, namely of time and

payroll records. Mot. at 16. The parties also informally exchanged relevant payroll and

8

timekeeping data. *Id.* Because the claims for overtime pay relate primarily to time and payroll records, the parties likely had enough information to fairly weigh the merits before reaching a resolution. Accordingly, this factor weighs in favor of approving the settlement.

### 3. Seriousness of Litigation Risks Faced by Parties

"Courts favor settlement where 'there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all.'" *Beidleman*, 2018 WL 1305713, at *4 (quoting *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015)). While the parties agree that the cash-in-lieu claims are essentially guaranteed after *Flores*, both parties agree that, if this case were to proceed to trial, they each would face uncertainties due to the bona fide disputes in the case. Mot. at 17. Most importantly, the parties dispute whether holiday-in-lieu pay should also be included in the rate at all. *Id.* Because the issue has not been addressed by the Ninth Circuit, and is currently being litigated in several California district courts, the issue presents a risk to both parties should the case go to trial. *Id.* (citing *Aboudara, et al. v. City of Santa Rosa*, No. 4:17-cv-01661-HSG[5]; *Lewis, et al. v. County of Colusa*, No. 2:16-cv-01745-VC (E.D. Cal.); *McKinnon et al. v. City of Merced*, No. 1:18-cv-01124-LJO-SAB (E.D. Cal.); *Burris v. City of Petaluma*, No. 4:18-cv-02102-HSG (N.D. Cal.)).

Considering the uncertainties of litigation, the relative immediacy of settlement serves to benefit the purported class members. *See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that "voluntary conciliation and settlement are the preferred means of dispute resolution"). Thus, this factor favors approving the settlement.

### 4. Scope of Any Release Provision in Settlement Agreement.

As the parties point out, "[a] FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." Mot. at 17 (quoting *Slezak*, 2017 WL 2688224, at *4). "Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute." *Beidleman*, 2018

---

[5] Again, the parties incorrectly cite the case number as 4:14-cv-01661-HSG.

WL 1305713, at *4 (citing *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010)).  Here, the release applies only to the FLSA claims and the MOU overtime claims related to this action, and does not extend to claims arising beyond the date of the settlement agreement.  Mot. at 17–18; Mastagni Decl., Ex. A ("Settlement Agreement"), ECF No. 70-2 at 3.  Moreover, the agreement states the release "does not include claims relating to conduct or activity not attributable to Plaintiffs' FLSA and/or MOU overtime claims relating to or arising from this Action . . . ."  Settlement Agreement at 4.

Because the release is sufficiently tailored to the claims at issue in this suit, this factor counsels in favor of approving the settlement.

      5.     <u>Experience and Views of Counsel and Opinion of Participating Plaintiffs</u>

Plaintiffs' counsel has considerable experience in the field of labor law, and represents this settlement is fair, reasonable, and within the maximum range plaintiffs could expect to recover after trial.  Mot. at 18; *see also Beidleman*, 2018 WL 1305713, at *5 (citing favorably experience and opinion of David Mastagni, plaintiffs' counsel in this case, finding that experience and views of counsel supported approving the FLSA settlement).  Furthermore, counsel for defendant has over twelve years of experience litigating wage-and-hour disputes, including FLSA claims.  Charbonneau Decl., ECF No. 70-9 ¶ 2.  She too believes the settlement is fair and reasonable.  *Id.* ¶ 17.  The parties do not present any evidence of the plaintiffs' individual opinions of the settlement, other than the signature pages of the settlement agreement signed by the opt-in plaintiffs.  *See* Plaintiffs' Individual Signature Pages, ECF Nos. 70-3–70-5.  Nevertheless, more than 500 opt-in plaintiffs signed the settlement agreement, which suggests the settlement is a fair and reasonable adjudication of their claims.  *See Beidleman*, 2018 WL 1305713, at *5 (fact that all opt-in plaintiffs, representing forty percent of whole class, had already signed settlement agreement weighed in favor of approval of FLSA settlement).

Accordingly, this factor weighs in favor of approving the settlement agreement.

/////

10

1             6.        <u>Possibility of Fraud or Collusion</u>

2         "The likelihood of fraud or collusion is low . . . [when] the Settlement was reached

3 through arm's-length negotiations, facilitated by an impartial mediator." *Slezak*, 2017 WL

4 2688224, at \*5 (citing *City P'ship Co. v. Atl. Acquisition Ltd. P'shp*, 100 F.3d 1041, 1043 (1st

5 Cir. 1996). Additionally, there is a low probability of fraud or collusion when settlement

6 negotiations were facilitated by a magistrate judge. *Beidleman*, 2018 WL 1305713, at \*5. Here,

7 the parties represent their settlement negotiations have been at arms-length, and Magistrate Judge

8 Claire oversaw two full days of negotiations and "significantly contributed to achieving this

9 global accord." Mot. at 18. Moreover, the parties highlight that plaintiffs were given the

10 opportunity to review the settlement agreement and discuss it with counsel before signing. Mot.

11 at 15. The fact that over 500 plaintiffs voluntarily signed the agreement also signifies a lack of

12 collusion. Mot. at 19. No other "subtle signs" of collusion exist, such as a disproportionate

13 award of attorneys' fees or a non-monetary settlement for plaintiffs in the face of a large

14 monetary award to counsel. *See Beidleman*, 2018 WL 1305713, at \*5.

15         This factor counsels in favor of approving the settlement.

16 IV.        <u>ATTORNEYS' FEES AND COSTS</u>

17         "Where a proposed settlement of FLSA claims includes the payment of attorneys'

18 fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at

19 1180 (citation omitted); *see also* 29 U.S.C. § 216(b) (2018) (in FLSA action, court shall "allow a

20 reasonable attorneys' fee to be paid by the defendant, and costs of the action"). "The district

21 court has discretion in common-fund cases to award attorneys' fees in the amount of a percentage

22 of the common-fund or using the lodestar method." *Kakani v. Oracle Corp.*, No. C 06-06493

23 WHA, 2007 WL 4570190, at \*2 (N.D. Cal. Dec. 21, 2007).

24         The Ninth Circuit has generally set a twenty-five percent benchmark for the award

25 of attorneys' fees, and "courts may adjust this figure upwards or downwards if the record shows

26 special circumstances justifying a departure." *Ontiveros*, 303 F.R.D. at 372 (internal quotation

27 marks omitted) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir.

28 2011)). The Ninth Circuit has also approved the use of lodestar cross-checks to determine the

reasonableness of a particular percentage recovery of a common fund. *Seguin*, 2018 WL

1919823, at *6 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)).

Under the settlement agreement, plaintiffs' counsel will receive $275,165.44 out of

a total of $1,376,827.22, thereby receiving roughly 20 percent of the total recovery.  Mot. at 20.

This is below the Ninth Circuit's benchmark, and is also consistent with awards in similar cases.

*Hightower v. JPMorgan Chase Bank, N.A.*, No. CV 11-1802-PSG (PLAx), 2015 WL 9664959, at

*10 (C.D. Cal. Aug. 4, 2015) (approving attorneys' fees of 30 percent of the settlement fund in a

FLSA collective action); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 457 (9th Cir. 2009)

(approving attorneys' fees of 25 percent of settlement fund in a class action under FLSA)).

Comparison with the lodestar method also supports approving the settlement.  As

noted above, in cases where courts apply the percentage method, they are encouraged to use a

calculation of the lodestar as a cross-check to evaluate the reasonableness of the percentage

award. *See Bluetooth,* 654 F.3d at 943.  In calculating an attorney's fees award under this

method, a court must start by determining how many hours were reasonably expended on the

litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill

required to perform the litigation.  *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir.

2008) (citation omitted).  When a court uses the lodestar as a cross-check to a percentage claim of

fees, it need only make a "rough calculation."  *Bond v. Ferguson Enterprises, Inc.*, No. 1:09-cv-

1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011).  The lodestar amount for

the two primary attorneys on the case, calculated using a range of $540 to $695 for partners and

$300 to $490 for associates as the "prevailing market rate of the relevant community," produced a

range of $280,722.00 to $417,129.50.  Mot. at 21–22 (citing *Ogbuehi v. Comcast of

California/Colorado/ Florida/Oregon, Inc.*, No. 2:13-cv-00672-KJM, 2015 WL 3622999, at *12

(E.D. Cal. June 9, 2015) (calculating lodestar amount using $650 per hour for experienced

attorney and $250 per hour for associate with two years' experience); *Zakskorn v. Am. Honda

Motor Co.*, No. 2:11-cv-02610-KJM, 2015 WL 3622990, at *15 n.4 (E.D. Cal. June 9, 2015)

(calculating lodestar amount using $540–$695 per hour for partners and $300–$490 per hour for

associates and multiplying by individual attorneys' hours as represented in their respective

declarations)).  The actual amount designated for counsels' fees in the settlement agreement is less than the lower end of this range.  Thus, using the lodestar method as a cross-check, attorneys' fees are reasonable.

As both a percentage of the overall settlement award and compared to a reasonable lodestar calculation, the attorneys' fees award in the settlement is reasonable.

V.      ENHANCEMENT AWARD FOR NAMED PLAINTIFF

Representative plaintiffs, as opposed to designated class members, are eligible for reasonable incentive payments.  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  Whether to authorize an incentive payment to a class representative is a matter within the court's discretion.  *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).  The criteria courts consider in determining whether to approve an incentive award include: "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation[;] and [ ] 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."  *Id.* (citations omitted).

In this case, the named plaintiff, Tracey Valentine, would receive $1,000 as an incentive award under the settlement.  Mot. at 5.  At the hearing, plaintiffs' counsel explained that this award was for the named plaintiff's assistance in drafting the complaint, participation in mediation, and help with discovery.  Because this amount is negligible with respect to the overall settlement amount, and less than has been awarded in similar cases, the court approves this incentive award as compensation for the named plaintiff's participation in the case.  *See, e.g.*, *Selk*, 159 F. Supp. 3d at 1181 (S.D. Cal. 2016) (approving $5,000 payment to named plaintiff in FLSA case).

/////

/////

/////

/////

13

## VI.    CONCLUSION

For the reasons stated above, the court GRANTS the parties' joint motion for approval of settlement agreement.  Additionally, the court resolves the following items:

1. The parties' stipulation to allow Daniel Weld to be included as an individual plaintiff, ECF No. 59, is GRANTED;

2. The stipulation to dismiss plaintiffs listed in ECF No. 69 is GRANTED; and

3. The case is hereby DISMISSED.

IT IS SO ORDERED.

DATED:  February 15, 2019.

_____
UNITED STATES DISTRICT JUDGE

14